*New-London,*
*July,*
*1823.*

*Fitch*
*v.*
*Waite.*

——◄●►——

### BILL *against* PRATT.

An execution being levied on 80 acres of land, the appraisers appraised 22 acres of it, at 15 dollars per acre, and made a certificate thereof, specifying the quantity and boundaries, which they delivered to the creditor, in the presence of the officer. Shortly afterwards, at the request of the creditor, and without the knowledge of the officer or of the debtor, they again viewed the land so levied on, and appraised the requisite quantity thereof, having different boundaries, at 11 dollars, 28 cents, per acre; and delivered a certificate of the latter appraisal to the officer, by whom the land so appraised was set off, without any new levy. Held, that in the absence of fraud or corruption, the proceeding was legal, and effected a transfer of title.

This was an action of ejectment; tried, on the general issue, at *Norwich, January* term, 1823, before *Brainard, J.*

The plaintiff claimed title, by the levy of an execution in his favour against the defendant. The levy was made, by the officer, on the 11th of *February,* 1822, on eighty acres of land;

and immediately afterwards, he called out the appraisers, who were sworn, and viewed the land. On the next day, they made, signed and delivered to the plaintiff, in the presence of the officer, a certificate, stating, that they had appraised twenty-two acres of the land so levied on, particularly described, at fifteen dollars per acre. Afterwards, the plaintiff, without the knowledge of the officer or the defendant, requested the appraisers to go and again view the land ; which they accordingly did, when neither the officer, nor the defendant, was present. On the 6th of *March* following, they made a second appraisal, at eleven dollars, twenty-eight cents *per* acre, varying the *Northern* and *Western* lines of the piece first appraised, and including some land not included, and excluding some land included, in the first certificate. A certificate of such second appraisal they delivered to the officer, who, in conformity thereto, set off the land, and completed his return, without any new or other levy. The action was brought for the land described in the second certificate. The defendant claimed, that the second appraisal was void. The court charged the jury, that it was not, of course, void ; that the appraisers, if they were dissatisfied, or had made a mistake, had the power to alter their appraisal, provided they did it before the levy was completed ; and that, if the jury should be satisfied, that there was no fraud, on the part of the plaintiff, and no fraud or corruption, on the part of the appraisers, affecting such second appraisal, they must find a verdict for the plaintiff.

The jury returned a verdict for the plaintiff; and the defendant moved for a new trial, on the ground of a mis-direction.

*Isham* and *Brainard*, in support of the motion, contended, 1. That the second appraisal was void, because the appraisers, by the first appraisal, which was perfect, had done all they could do, and their powers were ended. They were not permanent officers ; they were appointed to perform a particular duty ; and having performed it, they had no longer any authority. The life of an appraiser is not, of course, as long as the life of the execution : he dies as soon as he has spun his web. There was no evidence of any *mistake* in the first levy ; and none is to be presumed.

2. That the levy was void, on principles of sound policy. If there may be a second appraisal, there may be a third, and so on, till the creditor gets one to suit him ; and then he may elect which he will take. This would be an *elegit* with a wit-

ness. It is difficult, in such a case, to prove actual fraud. It is a sufficient objection to the proceeding in question, that it gives the creditor a very improper advantage.

*Waite*, contra. The question of fraud was distinctly submitted to the jury ; and they have found, that there was none. The levy was unexceptionable. It was upon the whole of a certain tract of land belonging to the debtor. The appraisers, regularly appointed and sworn, were then called to appraise it. They appraised it accordingly, and handed their certificate to the creditor ; but did not deliver it to the officer. For some reason—on account of a mistake, it might be—through fraud and collusion with the creditor, it certainly was not—they thought proper to alter their appraisal, and did alter it. They then delivered a certificate of the latter appraisal to the officer, as their only certificate ; and he set off the land in conformity to it. The charge was correct, unless the certificate given to the creditor, precluded the appraisers from making, under any circumstances, a second appraisal. In support of such a claim there is neither law nor reason.

HOSMER, Ch. J. The precise manner of setting off land on execution, is not prescribed by law, but unquestionably, so far as the statute has gone, it must be complied with, and that mode of levy alone, should be sanctioned, which is fair, and involves no unreasonable hardship. In consistency with this general principle, the construction of a levy, ought to be liberal ; as the taking of land in payment of a debt, is usually the result of necessity, and most commonly disadvantageous to the creditor.

Under the charge of the court, the jury must have found, that there was no fraud or deceit, on the part of the plaintiff, nor any corruption, on the part of the appraisers. Had there been any unreasonable hardship, of which the debtor might justly complain, a vigilant jury, whose eyes will ever be open on an enquiry into the motives and tendencies of every transaction of the nature now under discussion, would have found a verdict for the defendant.

Assuming that the levy was not contaminated, by any thing unfair or oppressive, which, from the motion, I think myself warranted to do, the case is reduced to the enquiry, whether it was legal. It appears, that the execution was levied on the 11th day of *February*, 1822, on eighty acres of land ; and that on the next day, persons duly appointed appraised twenty-two

*New-London,*
*July,*
*1823.*

Bill
*v.*
Pratt.

acres of the aforesaid land, at fifteen dollars per acre. Of this act of theirs, they made and subscribed a written certificate, which they delivered to the plaintiff, in the presence of the officer ; but it does not appear, that it was with his assent or approbation. Afterwards, without the knowledge of the officer, or of the defendant, the plaintiff requested the appraisers again to view the land, which they did, neither the officer, nor defendant, being present ; and on the 6th day of *March*, they appraised a part of the land beforementioned, and a piece of land, not included in the first estimate, at the sum of eleven dollars, twenty-eight cents, per acre. A certificate of this was duly made, and delivered to the officer ; and ultimately, the land was set off, on the plaintiff's execution. I lay out of the enquiry, the facts that there was no new levy, and that the officer and defendant were not present at the appraisal. The first levy covered the land ; and hence a relevy was unnecessary ; and with respect to the appraisement, the actual presence of the officer or debtor, was not legally requisite. On a question of fraud in the levy, the above facts, so far as they conduce to show a corrupt motive, would, undoubtedly, be of importance ; but in every other respect, they are entirely inefficient.

It has been argued, that on the delivery of the first certificate to the plaintiff, the appraisers had terminated their authority, and were *functi officio ;* but for this supposition, there is no foundation. The law requires, that the appraisers shall make an estimate of the land in writing, under their hands, and the same deliver to the officer, who shall set out, by metes and bounds, so much of the land appraised, as shall be sufficient to satisfy the execution. Whatever effect such a delivery might have, on which the expression of an opinion is unnecessary, it is very apparent, in this case, that to the officer the first certificate was never delivered. It was put into the hands of the creditor, the officer not assenting ; and to the officer, no delivery was ever made, but of the second certificate only. The creditor was not, in any sense, the officer's agent ; and, of consequence, his act was not the act of the officer. He was the agent of the appraisers ; and they had the same right to resume the certificate from him, as from any other stranger, with whom they might have deposited it. By this act, their authority was not terminated, unless we extend our retrospect further, and declare, that the appraisement having once been made, is unalterable, both as to the subject and the price. On this point, there is no positive law ; and the above position must be tested

by principles of justice and convenience. It is not difficult to see, that an appraisement may have been made, on mistaken grounds, which the appraisers ought to rectify ; or that, from the particular condition of the subject appraised, they were deceived ; or from the omission to advert to a fact, which appears with full evidence, that they have confined their estimate to land, which, in justice, the creditor ought not to accept. They may have put a value, for example, on ten acres of pasture, and neglected to appraise, a contiguous acre of ground, on which there was water, and without which the pasture would be nearly worthless. As the certificate of appraisement was, virtually, in their own hands, they had a right to correct any error or mistake, in prevention of injustice, and conform the certificate to their last determination. This principle is fully warranted, by the case of *Benjamin* & al. v. *Hathaway*, 3 *Conn. Rep.* 528. decided by this Court. On the delivery to the officer, of the only certificate, which ever reached his hands, the law had imposed upon him the imperative duty of setting off such part of the land appraised, as would extinguish the execution debt ; which he accordingly did. The proceeding was correct : and, in my opinion, there is no ground for impeaching the levy.

The other Judges were of the same opinion.

*New trial not to be granted.*