## BOOTH *against* BOOTH.

The act of *May,* 1826, providing that no levy of an execution on real estate,
previously made, shall be deemed void, because the officer embraced in his
return, as part of the costs of levy, other and greater fees than were by
law allowable, is a constitutional and valid act.

To transfer the title to real estate, by levy of execution, every requisite to a
valid levy must appear on the return, by express words, or by reasonable
construction.

Where the officer certified in his return, that he demanded of the debtor,
money, goods or chattels to satisfy the execution, but none were paid or
shewn to him; in an action of ejectment by the creditor against the debtor,
it was held, that it sufficiently appeared from such return, that personal
estate of the debtor could not be found.

Where it appeared from the return, that the right and title of the debtor in
the land levied on was appraised, and *that* was set off to the creditor; it
was held, that the *land* was well set off.

Where the return omitted to state, that the justice of the peace who appointed
an appraiser, *could judge between the parties;* it was held, that such
omission was not a fatal defect; it not being necessary to negative any
exception to the capacity of a magistrate.

Where the officer certified in the body of his return, that the appraisers were
freeholders of the town where the land lies; and the certificate of apprais-
ers, which the officer annexed to his return, below his signature, and
caused it to be returned to and recorded in the clerk's office, stated, that
they were *indifferent* freeholders; it was held, that the officer thereby
*adopted* the certificate of the appraisers, making their averment his own;
and consequently, that it sufficiently appeared from the return, that the ap-
praisers were *indifferent freeholders.*

It seems, also, that an averment, by the officer, in his return, that the ap-
praisers were appointed and sworn according to law, implies, that they
were indifferent and unexceptionable.

Where the officer certified in the body of his return, that the appraisers ap-
praised the land levied on at a certain sum, and that he thereupon set off
the land to the creditor; and he annexed to his return, below his signature,
the certificate of the appraisers, and caused it to be returned to and recor-
ded in the clerk's office; it was held, that by fair implication, such certi-
ficate was in the possession of the officer, and that too, before he set off the
land; because he could not set it off before he knew its value, and he
could not know its value but by the certificate; and because every man
acting officially is presumed to have done his duty, until the contrary
appears.

THIS was an action of ejectment ; to which the general issue was pleaded.

The defendant, *Phebe Booth,* claimed title to the demanded premises, by virtue of the levy of an execution in her favour against *Thompson Booth,* the defendant, and two other persons. A copy of the execution and of the officer's return, duly authenticated, being offered in evidence, the defendant objected to the return, on the ground that it did not appear thereby, that the requirements of the statute (*tit.* 2. *s.* 76. *p.* 57.) had been complied with. In this stage of the cause, it was taken from the jury, by consent of parties ; and the question as to the admissibility of the return was reserved for the advice of this Court.

The return was as follows : " *Litchfield* county, ss. *New-Milford, December* 15th, 1825. Then, with this execution, I repaired to the within-named *Joseph Booth* and *Daniel Booth,* and made demand of them for money, goods or chattels to satisfy this execution and costs, but none were paid or shown unto me ; and on the same day, I repaired to the usual place of abode of the within-named *Thompson Booth,* and there made demand for money, goods or chattels to satisfy this execution, and costs, but none were paid or shewn unto me. Then, by virtue of the within execution, and by direction of the creditor, I, at said *New-Milford,* on the same 15th day of *December* 1825, levied this execution on the following described piece of land, as the property of the within named *Thompson Booth,* situated in said *New-Milford,*" &c. [Here the land was particularly described.] The return proceeded as follows : " The creditor appointed *Levi Morris,* Esq., a freeholder of said *New-Milford,* an appraiser of said land ; and I applied to said *Thompson Booth,* and notified him to appoint an appraiser. I then applied to *Joel Sanford,* Esq., the next justice of the peace, of said *New-Milford,* and he appointed *Lewis Frost* and *David Burr,* both freeholders of said *New-Milford,* appraisers of said land ; which appraisers were all duly sworn according to law ; and they did, under oath, on the 5th day of *January,* 1826, appraise said land at 197 dollars and 26 cents, being the true and just value of all the right and title that the said *Thompson Booth* has in and to said land. I do, therefore, on the 6th day of *January,* 1826, by virtue of this execution, hereby set off to the creditor named in this execution all the right and title, that the said *Thompson* has in and to said piece of land, at the sum of 197

*Litchfield,*
June, 1829.

Booth
*v.*
Booth.

*Litchfield,*
*June, 1829.*

Booth
*v.*
Booth.

dollars and 26 cents, in full satisfaction of this execution and costs.          Attest.

     *Almon Treat,* Constable of *New-Milford.*"

Then followed a schedule of the officer's fees, comprising these items among others :

| | | |
|---|---|---|
| "Travel to get appraisers appointed - -  | $0. | 5 |
| Justice's fee for appointing - - - - | 0. | 12 |
| Appraisers' fees - - - - - - | 3. | 00 |
| Expenses for victualing appraisers - - - | 0. | 87½ |
| Chain-bearers - - - - - - | 0. | 25 |
| My time with appraisers - - - - | { 0. | 19 |
| | ( 0. | 50" |

The following certificate was then subjoined :

"*Litchfield* County, ss. *New-Milford, January* 6th, 1826.

We the subscribers, indifferent freeholders of *New-Milford,* appointed by the creditor and *Joel Sanford,* Esq., Justice of the Peace, to appraise all the right and title, that the within-named *Thompson Booth* has in and to said piece of land, on which this execution has been levied, by *Almon Treat,* constable, a particular description of which may be seen in the foregoing indorsement, we do appraise and value the same to be worth to the creditor 197 dollars and 26 cents, as is described in said *Treat's* endorsement above.

     *Levi Morris,*
     *David Burr,* } Appraisers."
     *Lewis Frost,*

Next followed the certificate of Justice *Sanford,* dated the 19th of *January,* 1826, that he appointed two of the appraisers and administered the oath to them all. The certificate of the town-clerk, dated also the 10th of *January,* 1826, that the execution and return had been received for record and recorded by him, and of the clerk of the court, dated the 14th of *January,* 1826, that the same had been filed in his office, completed the document.

The case was first argued before this Court, in *June* 1827, HOSMER, Ch. J. and PETERS, LANMAN and DAGGETT, Js., being present, by *J. W. Huntington* and *P. Smith* for the defendant, and by *Sherman* and *D. S. Boardman* for the plaintiff. The Judges, after consultation, being divided in opinion,(*a*) the case

(*a*) Ch. J. *Hosmer* and Judge *Peters* were of opinion that the officer's return shewed no legal transfer of title : Judges *Lanman* and *Daggett* thought otherwise.

was continued, to be argued again before a full Court. At the *Litchfield,* term in *June,* 1828, BRAINARD, J. was unable to attend ; and *June, 1829.* the case was continued to this term ; when it was again argued, before all the present Judges, by *J. W. Huntington* for the defendant, and *D. S. Boardman* and *Bacon* for the plaintiff.

Booth
*v.*
Booth.

The counsel for the defendant, after remarking, that the doctrine is now well settled, that every thing required by statute to constitute a valid levy, must appear on the return of the officer, either in express terms or by necessary inference ; and this, first, because the statute requires it, (*p.* 58. *s.* 77.) and secondly, because such is the object of the return, in order that the debtor and third persons may know whether the land is vested in the creditor, contended, 1. That more land was taken and set off upon the execution, than the amount of the debt, costs and lawful charges. The legislature, in the act regulating salaries and fees, have specified the items of fees which an officer may lawfully take ; and all other items are are expressly prohibited, and are, of course, unlawful. *Stat.* 393. The levy of an execution on land operating as an entire conveyance of the land, is, in contemplation of law, an indivisible act. If it is illegal or invalid *in part,* it is, and from the nature of the case it must be, *wholly* so.

As several unauthorised items were included in this return, it will probably be conceded, that the levy is invalid, unless it is aided by the confirmatory act of *May* 25, 1826. That act is inoperative, being opposed to the constitution of this state, (*art.* 1. *s.* 9.) inasmuch as it deprives a person of his property without due course of law. Retrospective laws, the object of which is to supply some defect or correct some mistake or informality, have indeed been sanctioned. But the law in question was not of that character. At the time it was passed, this land belonged to *Thompson Booth.* The levy, so far as this point is concerned, was not merely defective or informal, but was absolutely null and void. If the law is to have effect, it takes, *proprio vigore,* the land of *Thompson Booth,* and gives it to *Phebe Booth.*

2. That it does not appear from the return, that personal property sufficient to satisfy the execution could not be found ; and consequently, the levy on land was unauthorized. *Stat.*

57.  The officer must either state in terms, that such estate could not be found by him ; or he must state, that he made diligent search for it without success.   To say that he demanded it, and it was not shewn to him, is not equivalent to saying that it could not be found by him.    This essential requisite appears neither by express averment, nor by necessary inference.

3. That the return does not shew, that the land levied on was set off to the creditor, but merely the *right and title* which the debtor had ; and what *that* was, does not appear.   The statute requires the officer to set off, by metes and bounds, so much of the *lands* as may be sufficient, &c.    *Stat.* 57.

4. That it does not appear, that the justice of the peace, by whom two of the appraisers were appointed, and sworn, could by law judge between the parties in civil causes.   This is one of the requisites of the statute ; and its existence must be shewn by the return.   The law has delegated a special authority to a particular class or description of magistrates ; and no other person can legally exercise it.

5. That it does not appear from the return, that the appraisers were *indifferent* freeholders.

To this objection two answers are anticipated.   First, that it is not necessary that this fact should be expressly stated ; as the law will *presume* that they are indifferent, until the contrary appears.   As to those appointed by the justice, this presumption may properly arise, from the fact the justice is to be presumed to have done *his duty*.   But in relation to the appraiser appointed by the *creditor*, no such ground of presumption can exist.   The creditor himself is not indifferent ; and the justice has no discretion to exercise in relation to the appointment. If a person so appointed is presumed to be indifferent, it must be because the law presumes indifference from the mere fact of the appointment.   There is nothing else from which the inference can be drawn.   But it is very obvious, that such a presumption would be most unsafe and dangerous.   On the same ground it may be presumed. that the appraisers were *freeholders ;* for there is the same ground for the presumption ; or that they were freeholders of the *town* where the land lies ; or that they were *sworn.*

Secondly, it may be said, that it does appear from the return of the officer, that the appraisers were indifferent ; for the appraisers have so certified, and their certificate is a part of his

return. It is true, that the appraisers have so certified ; but it is denied, that their certificate, or at any rate, that part of it which contains a statement of their indifference between the parties, constitutes any part of the return of the officer ; and this, it is believed, is susceptible of demonstration. This leads to the consideration of the question, what is the return of the officer ? It is that to which he has *certified ;* that which he has attested ; that which he has made *his own,* either by express terms, or by reference. It is obvious, that nothing can be a part of his return, except what receives his *official sanction ;* and it is very clear, that the statute intended (and such has been the uniform construction,) that the officer, acting as the agent of the law, should, under his oath of office, *attest,* or give his official sanction to, the existence of all the requisites made necessary to constitute a valid levy. To him *alone* is confided the authority to certify the facts ; and he is authorized and required to make such certificate ; and therefore, the statute says the officer shall make his *indorsement* of such appraisal and proceedings. *Stat.* 58. *s.* 77. Now, is a certificate of the appraisers appearing *on this execution,* to which the officer has *not attested,* and to which he has made *no reference,* adopted by him, and by him certified to be true ? If so, the position must be assumed, that every thing which appears on the execution, constitutes a part of his return, and is to be considered as attested and sanctioned by him, *because* it appears there.

Look at the consequences which would result from such a doctrine.

In the first place, suppose the facts stated in the indorsement of the officer and those stated in the appraisal *differ* in an essential particular ; which is to govern ? Suppose there is a difference as to the amount of the appraisal, or the quantity of land ; would the levy be good ?

Secondly, if this doctrine be true, it necessarily follows, that a levy would be valid, which did not describe the property set off, or state who the appraisers were, or how they were appointed, or the estimated value of the land—provided these facts appeared in the appraisers' certificate.

Thirdly, there being no reference, made by the officer, to the appraisal ; how can the court know, that the one which there appears, was either signed by the appraisers—or that it is the one under which the officer finally acted—or that it is the one which was delivered to him before he set off the land ?

The officer has not identified it as such ; nor from any act of his, is it known how it came there.

Fourthly, the appraisers' certificate is not an essential or necessary part of the officer's return.   If he *certify* to the facts, it is sufficient.   The object of the appraisal is, that the officer may know what quantity of land is to be set off; and the object of the appraisers' certificate is to enable the officer to certify the facts.   Can it then be supposed to be a reasonable construction of the law, that the certificate itself should be sufficient evidence of the facts stated in it, when the very object for which it is required is to enable the officer to certify them ?

But admitting that the certificate of the appraisers appended to the return, constitutes a part of it, as to all the facts to which the appraisers are competent to certify, being within the scope of the power delegated to them ; yet it is no part of their duty to certify that they are *indifferent,* nor are they competent so to certify.

6. That this return is defective, because it does not shew that the appraisal was *in writing*, or *signed* by the appraisers, or *delivered* to the officer.   These are, unquestionably, indispensable requisites under the statute ; and it is obvious to inspection, that in the indorsement preceding the official signature of the officer, none of these facts are stated.   To this objection no other answer can be given than that given to the preceding one, *viz.* that a written certificate is appended to the return, which, by intendment of law, constitutes a *part* of it, and is to be *presumed* to have been delivered to the officer. This reasoning has already been considered.   It has no more solidity with reference to the present objection than the preceding one.

7. That it does not appear from any part of the proceedings indorsed on this execution, that the certificate of appraisal was delivered to the officer *before* he set off the land ; but it does appear, by fair, if not necessary inference, that it was delivered not only after the setting-off was commenced, but after it was completed.

The statute, after requiring the appraisers to deliver their appraisal to the officer, proceeds thus : " Who shall *thereupon* set out to the creditor," &c.   *Stat.* 57. *s.* 76.   Where the words of a statute have a plain meaning, it must be construed according to its words.   Any other rule of construction would make

the judges framers of the law, instead of the expounders.
But if we look at the *object* of the law as a guide in the con-
struction, we shall be conducted to the same result. It was
to enable the officer, from an authentic document in his own
hands, to ascertain what quantity of land was to be set off.
His information as to the appraisal was not to rest in parol ;
and he could not be furnished with a written appraisal, unless
it was *delivered* to him. This point has also been settled by
judicial decisions. *Bill* v. *Pratt,* 5 *Conn. Rep.* 126, 7. *Met-
calf* v. *Gillett,* 5 *Conn. Rep.* 400.

It will be said, however, that it does appear from the officer's
return, that previous to the setting-off, the appraisal was de-
livered to him. This appears neither from the indorsement
of the officer, nor from the appraisal itself. Indeed, for aught
that appears on these proceedings, there is no evidence that
this appraisal was ever attached by the officer, or was ever
received by him ;—much less, that it was *before* he made his
indorsement. All that does appear, is, that it was *recorded* by
the town-clerk, and is in the county clerk's office ; but wheth-
er it was delivered by the appraisers, or the officer ;—whether
it is an original or a copy, does not appear. Its appearance on
the proceedings, now, as well comports with the delivery of it
after as before the indorsement was made and signed. Where
both the officer and the appraisers are *silent* as to the time of
its delivery, and there is nothing from which the court can *fix*
the time, there is no room for inference on the subject.

But we go a step further. We insist, that it does appear, by
fair, if not necessary inference, that it was not delivered until
after the officer had completed his indorsement ; for the in-
dorsement is referred to expressly, in the appraisal : "A partic-
ular description of which may be seen in the *foregoing in-
dorsement ;*"—"as is described in said *Treat's indorsement
above.*" Here we have indubitable evidence, that it was not
delivered, nor signed, until the indorsement of the officer had
been made out and completed.

Our next proposition is, that if the appraisal was not deliv-
ered before the officer had completed his indorsement, it was
not delivered before the land was *set off* to the creditor. When
the officer has made and signed the indorsement, which is his
return, he has *set off* the land. For first, he has then com-
pleted his official act, with the mere exception of causing it to
be recorded, and then returned to the clerk's office. He has

*Litchfield,*
June, 1829.

Booth
*v.*
Booth.

no seisin or possession to deliver. His indorsement is to shew how much he has appropriated. Secondly, the statute (*s.* 76.) requires the officer to indorse on the execution the land set out [or *set off*] by him at the appraisal ;—*i. e.* he is to state that it is wholly or partially satisfied by the land which he has thus set off ;—most obviously presupposing, that he has set it off before he makes his indorsement of total or partial satisfaction. Thirdly, the statute (*s.* 77.) makes it the duty of the officer to cause the execution, with his indorsement of appraisal and proceedings, to be recorded and returned, &c. This evidently implies, that previous to the record, the officer is to make a written statement or indorsement of his proceedings ; but an important part of his proceedings thus to be indorsed, is the setting off by metes and bounds. This is his sole act ; neither the town-clerk nor the clerk of the court having any thing to do with it ; and if done at all, it must be done before the execution comes into their hands.

The counsel for the plaintiff remarked, That most of the objections urged against the validity of the proceedings in question are built upon the assumption that the officer must evince his compliance with the requirements of the statute, by technical averments ; that such nicety has not heretofore been required ; that although it is a just principle, that all the requisites of the statute must be complied with, in order to an alienation of the title, it is not a just principle that the officer is bound to state his compliance, with technical skill and precision ; but it is enough, if to the eye of common sense it is apparent from the return that the requirements of the statute have been complied with. The latter principle is fully supported by the cases of *Brace* v. *Catlin,*(*a*) decided by this Court, in *June,*1813,

(*a*) BRACE *against* CATLIN.

THIS was an action of ejectment for a tract of land in *Harwinton ;* tried, on the general issue, at *Litchfield, February* term, 1813.

The land demanded was formerly the property of *Nathaniel Brace ;* and the plaintiff claimed title, by virtue of the levy of an execution in his favour against *Nathaniel Brace,* on the 12th of *April,* 1810. In support of this claim, the plaintiff offered in evidence an authenticated copy of the execution referred to, and of the officer's return thereon. The latter was as follows : " *Litchfield* county, ss. *Harwinton,* 12th of *April,* 1810. Then with this execution I repaired to the last usual place of abode of the within-named debtor, and made search for personal estate whereon to levy this execution, to satisfy the same and my fees, but could not find any ; neither could I find

not reported, *Beach* v. *Camp*, 1 *Root* 241., cited 1 *Swift's Dig.* 155. *Gold* & al. v. *Carrington*, cited 1 *Root* 242. and *Pendleton* v. *Button*, 3 *Conn. Rep.* 406.

They particularly insisted, 1. That if the officer embraced in his return, as part of the costs of levy, other or greater fees than were by law allowable, the irregularity was cured, by the

the body of said debtor within my precincts, by the most diligent search. On said 12th day of *April*, the creditor ordered me to levy said execution on one certain piece or parcel of land, lying in said *Harwinton*, as the debtor's property. I then made application to *Benjamin Griswold*, Esq., as the next justice of the peace, to appoint two lawful freeholders of said town of *Harwinton* ; and said justice appointed *Israel Smith* and *Roswell Alford*, freeholders of said town ; and the creditor appointed *Benjamin Ames*, a freeholder of said *Harwinton* ; and they appraised the following described piece or parcel of land as the debtor's property, [describing the land in question by metes and bounds] containing five acres, three roods and twenty-five rods of land, at eighteen dollars *per* acre, amounting to 106 dollars and 26 cents.

" We the subscribers, being appointed to appraise the above described piece or parcel of land according to law, have appraised the same according to said description above mentioned.

*Israel Smith,*
*Benjamin Ames,*
*Roswell Alford.*

" This certifies, that I, *Benjamin Griswold*, Justice of the peace for *Litchfield* county, on said 12th day of *April*, 1810, on application of *Uriah Hopkins*, constable, administered the oath provided by law to *Benjamin Ames*, *Israel Smith* and *Roswell Alford*.

*Benjamin Griswold*, Justice of Peace.

" And on said 12th day of *April*, 1810, I put the within-named creditor in possession of the above described land ; whereof my fees are— [Here follows a list of items, amounting to 13 dollars, 44 cents.]

*Uriah Hopkins*, Constable.

" Received, *Harwinton*, *April* 12th, 1810, the above described land in full of the aforesaid execution. *James Brace.*

" Received and recorded, *April* 13th, 1810.

Teste, *Elijah Gaylord*, Register."

In connexion with this evidence, the plaintiff offered to prove, that *Nathaniel Brace* had resided out of the limits of the *United States* more than twenty years, and had not been within this state within twenty years. To the admission of the evidence thus offered by the plaintiff, the defendant objected ; but the court decided that it was admissible, and it accordingly went to the jury.

The defendant claimed title to the land, by virtue of an adverse possession of more than twenty years. The plaintiff resisted this claim, on the ground that the defendant took possession, and had continued in possession under a deed from *Nathaniel Brace*, dated the 11th of *November*, 1788, which was fraudulent and void, as against the creditors of the grantor ; and to prove the alleged fraud, the plaintiff offered in evidence certain declarations of the defendant made in the year 1788 ; to the admission of which the defendant objected. The court admitted the evidence ; and instructed the jury, that if they should

*Litchfield,*
June, 1829.

Booth
*v.*
Booth.

confirming act of *May* 1826. That this is a constitutional and valid act, was decided in *Beach* & al. v. *Walker,* 6 *Conn. Rep.* 190. The levy in question was made previous to the enactment of the law.

2. That the return shews sufficiently, that personal estate of the debtor could not be found. In the first place, a demand

find the conveyance from *Nathaniel Brace* to the defendant fraudulent, as claimed by the plaintiff, no length of possession by the defendant holding under such fraudulent deed, could give the defendant a title by possession, against the the title of a *bona fide* creditor to *Brace.*

In the course of the trial, there were some other questions of law raised, and decided in favour of the plaintiff, which it is not now material to state.

The plaintiff obtained a verdict ; and the defendant moved for a new trial.

*Bacon*, in support of the motion, after remarking, that in this state land is made liable to execution by statute merely, and to acquire a title by execution, the requisitions of the statute must be strictly complied with, contended, 1. That the return is defective, because it does not state, that the execution was ever *levied* on the land.

2. That the return is defective, because it does not state, that the land was appraised by three *indifferent* freeholders. That the appraisers should be indifferent, is a statute qualification as indispensable as that they should be freeholders, *Stat. tit.* 63. *c.* 1. *s.* 7. *p.* 282. *ed.* 1808.

3. That the return is defective, because it does not shew, that the debtor *neglected to choose* an appraiser ; and consequently, that the justice had no authority to appoint. This precise objection was taken, and held to be fatal, in *Eddy* v. *Knapp,* 2 *Mass. Rep.* 154.

The force of this objection was felt, on the trial, by the counsel for the plaintiff and by the court ; and it was then considered fatal, unless it could be removed. This was attempted, by offering parol evidence to prove, that the debtor had not been in this state for twenty years. But parol evidence to help out an officer's return, is inadmissible. The title which a creditor acquires to land, by virtue of an execution, is a *record* title ; and, from its nature, the record must be *complete.* It cannot be supplied by extrinsic averment or parol proof.

But if parol evidence is admissible to aid the return, or even if the officer had inserted in his return, that the debtor was not within the *United States,* it would not have been sufficient. This would not be equivalent to saying, that the debtor neglected to choose an appraiser. The averment may be true ; and yet the debtor might have had a known agent here specially authorized to choose an appraiser.

4. That the court erred on the trial, in admitting the parol declarations of the defendant, made twenty-five years before, to destroy the effect of an uninterrupted possession of the land from that time to the present. No reliance can be placed on evidence, which depends upon the recollection of witnesses after the lapse of such a period. Our statutes of limitation are founded on this principle. *Expedit reipublicæ ut sit finis litium,* is a maxim of the common law, which cuts off all stale demands. Sound policy forbids, that an antient deed, accompanied with an uninterrupted possession of more than twenty years, should be attacked and destroyed, by parol evidence.

and a refusal to pay or tender personal property, are stated in *Litchfield,* the return. The provision in the statute in regard to the taking of personal property, is in favour of the debtor ; and after having had an opportunity to turn out personal property, *he* cannot complain, whatever the creditor might do. Secondly, the statute, which requires the *demand* to be endorsed, does

*Gould* and *Sherman*, contra, insisted, 1. That it was not necessary for the officer to say, in *totidem verbis*, that he *levied* the execution on the land ; it being sufficient, if from the whole return, it appears, that this was done ; and that it does so appear in this case, is beyond doubt.

2. That the return was sufficient in regard to the qualifications of the appraisers. The officer applied to the justice to appoint *lawful* freeholders ; on this application he appointed two of the persons who acted as appraisers. In connexion with this, the return says, that the creditor appointed another. It is not necessary to specify the qualifications and the mode of appointment *in detail*. In *Sedgwick* v. *Waterman*, 2 *Root*, 434. the return was, that the appraisers were legally appointed and sworn, but did not shew *how* they were appointed ; yet the court held this to be a sufficient return.

3. That the want of notice to the debtor to appoint one of the appraisers, did not vitiate the levy. It appears from the face of the return, that the debtor had absconded, and could not, by the most diligent search, be found within the officer's precincts. This was a good excuse for want of notice ; for *lex neminem cogit*, &c.

But it is said, that parol evidence was admitted to eke out the return ; and this is made an additional ground of objection. In the first place, if the return shewed a sufficient reason for the omission complained of, the parol evidence offered did no hurt, and a new trial will not be granted for its admission. But secondly, the evidence was proper to obviate the defendant's objection. It was, at any rate, consistent with the return. Such evidence has been frequently received on the circuits. *Jackson* v. *Burr*, and *Jesup* & al. v. *Batterson*, in *Fairfield* county.

4. That a grantee under a fraudulent conveyance, cannot acquire a title by possession against the creditors of the grantor. This point was settled in *Beach* v. *Catlin*, 4 *Day*, 284.

5. That it is competent to a creditor, in a suit against such grantee, to shew the alleged fraud or trust, by parol evidence, *at any time.*

SMITH, J. It appears from the defendant's motion for a new trial, that a variety of questions were made in the court below, which have not been started before this Court.

The plaintiff claims title to the land in question, by virtue of the levy of an execution against *Nathaniel Brace ;* and the defendant's counsel insists, that the officer's return upon the execution is irregular and incomplete, and affords no sufficient evidence of title.

If the law requires all the facts necessary to constitute a title under the levy of an execution to be stated in the return of the officer, with the technical precision of special pleading, I should admit, that the present return is insufficient. But no such strictness has ever been required ; and certainty to a common intent has always been deemed sufficient. When, therefore, I look over this return, with a view to put that rational construction upon it, which

not require the officer to indorse a *non est inventus* as to personal property. *Stat.* 56. 57. *sect.* 74. 76. In the case of *Pendleton* v. *Button*, before cited, there was no such fact stated in the return. See the statement of the case, 3 *Conn. Rep.* 406.

3. That the officer acted correctly in setting off the *interest of the debtor* in the land. The words of the return are, " all the right and title that the said *Thompson Booth* has in and to said land." All that a man can have in land, is his *right and title* in it ; and this is all that he can transfer. *Co. Litt.* 345. *b.* The mode pursued in this case, is the common one ; and if the officer, in terms, sets off an interest tantamount to a fee, when the debtor has a less estate, the latter cannot complain ; and the creditor will get such right as the debtor had in the land. *Hitchcock* v. *Hotchkiss*, 1 *Conn. Rep.* 470. *Camp* v. *Smith*, 5 *Conn. Rep.* 80.

4. That the return is not fatally defective, for want of an averment, that the appraisers were *indifferent* freeholders. It is to be observed, in the first place, that this does appear, by way of recital, and informally ; for in the certificate of the appraisers they are stated to be " *indifferent freeholders.*" Secondly, it is not necessary that the officer should certify the fact of the appraisers being indifferent at all. It is enough that he states them to be freeholders of *New-Milford :* the law presumes them to be indifferent ; and their acts are good until impeached by matter *in pais.* This is an universal principle in relation to persons to whom the law assigns duties—*e. g.* jus-

we always feel ourselves at liberty to put on other written instruments, I discover clearly, that the execution has been levied on the land, though the word "levy" is not used in the return. I discover, also, that all the facts necessary to complete a title have been substantially stated, by the officer and the justice whose certificate has been incorporated by the officer with his, and makes a part of the return.

It was said in argument to be an objection to this return, that it does not appear from it, that notice was given to the debtor to choose an appraiser. But from the facts which do appear, this was impossible ; for the officer states in his return, that the debtor could not be found within his precincts ; and it appeared in evidence, as the motion states, that the debtor was actually without the limits of this state, during the whole life of the execution. This was not a case, therefore, which required notice.

The other Judges were of the same opinion, except MITCHELL, Ch. J. and INGERSOLL, J., who dissented.

New trial not to be granted.

tices, jurors, &c. It is not necessary to negate every possible exception, which may go to their disqualification. This point has been decided, in several cases, by the superior court ; and was directly decided, by this Court, in *Brace* v. *Catlin.* It is no part of the duty or legal capacity of a constable to certify the legal qualifications of others. His own acts must appear from his return ; but it is not his province to certify any thing more. He does not appoint the appraisers ; nor can he controul the appointment of them. He cannot even be supposed to *know* their qualifications, whether they are chosen by the parties, or appointed by a justice of the peace.

5. That the omission in the return of an averment, that the justice to whom the officer applied to appoint appraisers, was one who by law could judge between the parties, is not a fatal defect. Most of the considerations applicable to the preceding point, are equally applicable to this. The justice will be presumed qualified to appoint. His act in so doing exceedingly strengthened that presumption : For if his act in appointing be sufficient to warrant the inference, that he has appointed proper persons, (*i. e.* freeholders) as it was said to be in *Pendleton* v. *Button ;* surely it will warrant the conclusion that he himself is qualified to make the appointment. Judges and justices, in the discharge of their official duties, are as strictly required to be *indifferent* as appraisers of land ; and yet no lawyer ever thought of averring in his writ, that the judge or justice could by law try the cause, and thus negative the exceptions, which might disqualify him. It may be added, that neither in *Brace* v. *Catlin,* nor in *Pendleton* v. *Button,* did the return shew, that the justice was not disqualified, though the clause in the statute supposed to bear upon this point was the same then as since the revision of 1821. *Stat.* 282. ed. 1808. *tit.* 63. *c.* 1. *s.* 7.

6. That the return is not fatally defective for want of an averment, that the appraisers made an appraisement in writing, and delivered it to the officer before he set off the land. In the first place, if it were at all doubtful whether the officer were furnished with the appraisement before he set off the land, the law would presume that he was ; for in the absence of evidence, the law will presume the business to have been done *right.* It is a maxim of law, that " *omnia præsumuntur rite et solenniter esse acta, donec probetur in contrarium.*" 3

*Litchfield,*
June, 1829.

Booth
*v.*
Booth.

*Stark. Ev.* 1250. *Croft* v. *Pawlet,* 2 *Stra.* 1109. *Brice* v. *Smith, Willes' Rep.* 1. 3 *Stark. Ev.* 1687. 1693. But secondly, from the return it appears, not indeed by technical and express averment, but by necessary implication, that the officer was furnished with the appraisement in writing, before the setting off of the land. That it was *in writing* is certain ; for of this the most unexceptionable evidence is furnished, it being a part of the return itself, in perfect form, and signed by the appraisers.

That it was furnished *before* the setting-off, is also certain ; for the boundaries and description of the land, as well as its price and quantity, are founded upon it, and could not, by any possibility, have been made without it ; so that whatever point of time in the proceedings, after the appointment of the appraisers, is assumed as that at which the land is *set off,* it must have been posterior to being furnished with the appraisement.

But the counsel contended strenuously, that the land is never set off (or " *set out,*" as the language of the statute is,) until the whole business is consummated, by the final return of the officer to the clerk's office : In other words, the *setting out of the land* is not accomplished but by the concurrence of all the acts necessary to be done, the last of which is the return to the clerk's office. *Stat.* 58. *s.* 77. There is no delivery of possession, either actual or symbolical ; and no point of time before the final act of return can possibly be assumed as that at which the title passes. A deed, how complete soever in all its parts, conveys no title until delivery ; and an execution transfers none until the levy is completed, by the final return. The certificate of appraisement was certainly furnished before this event ; for it is part of what is returned by the officer.

Further, it is not only part of what he returned, but it is, strictly, *a part of his return.* By annexing it to the account of his proceedings, (in technical language called his *return,*) carrying it, so annexed, to the clerk's office, and causing the whole to be recorded together, he *adopted* it, and made it a part of his written statement. In *Williams* v. *Amory,* 14 *Mass. Rep* 28. Ch. J. *Parker,* in delivering the opinion of the supreme court of *Massachusetts,* says, " the certificates of the magistrate and of the appraisers may become a part of the sheriff's return ; and in case of an insufficient certificate by him, may supply the defect " In *Brace* v. *Catlin,* it was decided, by this Court, that the certificate of the magistrate made *a part of the officer's return.* The only difference between that case

and the present, in relation to this point, is, that there the cer- *Litchfield,* tificate was inserted *above* the officer's name, and here it is pla- June, 1829.. ced *below.* Can this circumstance vary the effect of the instrument ? Is not the certificate as much *adopted* by the officer, and made a part of his account of the proceedings, in one case as in the other ? In the case of a mortgage deed, does it make any difference whether the defeasance is inserted above or below the signature of the grantor ? If entered even on the back of the instrument, would it not still be *a part of it ?* In the case of a will, does it make any difference whether the testator writes his name at the top, or the bottom, or in the margin ? An officer levying an execution is required by law to indorse his bill of fees on the same ; which must be authenticated by him as fully as any other part of his return ; and yet the universal and invariable practice has been, to enter the bill of fees *below* the signature. Who ever doubted the correctness of this course ?

Booth<br>v.<br>Booth.

DAGGETT, J. Several objections have been raised against the validity of the officer's return, which will now be considered. Here I admit the principle advanced by the counsel, and adopted by those members of the Court who dissent from the opinion to be given, that every requisite to a valid levy must appear on the return, *by express words, or by reasonable construction.*

1. It is suggested, that several items in the bill of fees charged by the officer, and for which, as well as for the debt, the land was taken, were not provided for, by the statute on this subject. This is true ; and were this a fatal objection, still it is removed by the confirmatory act of *May,* 1826. That this act is constitutional, and did embrace this precise objection, was decided, by this Court, in the case of *Beach* & al. v. *Walker,* 6 *Conn. Rep.* 190. ; and the principle of that decision was recognized recently, at *Hartford,* in the case of *Norton* v. *Pettibone* & al. 7 *Conn. Rep.* 319.

2. It is said, that the officer has not returned, that he could not find any personal property whereon to levy, &c. He has certified, that he demanded of two of the debtors in person, and of the other at his usual place of abode, money to pay the execution, or personal property whereon to levy, and a refusal of the debtors to pay the execution or expose property. What more could have been done ? Was he bound to search

for property further? In the absence of all proof that personal property of the debtor might have been found, upon the exercise of any reasonable diligence, the officer has done his duty, or at least, he has done enough to shut the mouth of the defendant, according to the 74th and 76th sections of the statute above-mentioned. Let it be remembered, that the debtor, *Thompson Booth*, whose land was taken, sets up this objection,

3. It is objected, that by this return, it does not appear that the *land* was set off to the creditor. The answer is, the land was levied upon, and the right and title of the defendant was appraised, and *that* was set off. This is a statute conveyance of the land. The right and title to land is the whole of the land. It gives to the plaintiff the right to the use, occupation and disposal of it, and of course, the entire ownership of it. *Co. Litt.* 145. *b.* *Hitchcock* v. *Hotchkiss*, 1 *Conn. Rep.* 470. *Camp* v. *Smith*, 5 *Conn. Rep.* 80.

4. It is not alleged, that the justice of the peace, who appointed an appraiser, *could judge between the parties.* Who ever supposed before, that such an allegation was necessary? It might, with as much propriety, be contended, that it should appear that he was not insane by the visitation of God. It is never necessary, in pleading, to negative the exceptions which may exist against a judge or justice, before whom a suit is commenced.

There are two other objections, which deserve more consideration.

5. It is insisted, that it should appear, by the officer's return, that the appraisers were indifferent freeholders of the town in which the land lies. I concur in this opinion. The statute requires, that where land is set off on an execution, it should be appraised by indifferent freeholders of the town where it lies. The officer, as is agreed, has certified, that they were "freeholders of the town." The only question then, is, does it appear that they were *indifferent*? Now, they have given to the officer a certificate that they were thus indifferent; and he has annexed that certificate to his return, and procured it to be returned and recorded in the office of the clerk of the court. This is an adoption of their certificate, and a virtual averment that they were indifferent freeholders. The Chief Justice, in delivering the opinion of the Court, in *Pendleton* v. *Button*, 3 *Conn. Rep.* 406. says: " The act of the justice in appointing

and swearing an apraiser, implies that he is indifferent and un- *Litchfield,* exceptionable." The officer has annexed not only the certi- June, 1829. ficate of the appraisers above-mentioned, but also the certifi-

Booth
*v.*
Booth.

cate of the justice, that he appointed and administered the oath to those named appraisers. The officer, moreover, has certified, that the appraisers were appointed and duly sworn according to law. This brings this case within the principle of *Pendleton* v. *Button.* The idea that these certificates, thus appended, would remedy the defect in the officer's return, is also fully recognized, by the supreme court of *Massachusetts,* in the case of *Williams* v. *Amory,* 14 *Mass. Rep.* 28. 29.

6. The last objection is, that it does not appear by the return of the officer, that the appraisers delivered a certificate of their appraisal to the officer, or that they ever made any such certificate ; and this objection is said to bring the case directly within the decision of *Metcalf* v. *Gillet,* 5 *Conn. Rep.* 400. I do not so consider it. In that case, no mention was made, by the officer, of any certificate of appraisal. No certificate was appended or annexed ; nor was any intimation made, that one was ever given. To supply this defect, parol evidence was offered, to shew, that such certificate was made by the appraisers. This was very properly rejected. In this case, the certificate made by the appraisers, is annexed to the return, and by the officer lodged with the clerk. A copy is now offered of the whole from the clerk. By fair implication, then, this certificate was in the possession of the officer. But it is said, that it must have been in his possession, by delivery of the appraisers, before he set off the land ; for the statute is, that " *thereupon* (*i. e.* upon the certificate's being delivered to him) he shall set out to the creditor," &c. Suppose this to be the true construction of the act, I insist, that it is but a reasonable construction of his return, that he had it *before* he set out, or set off, the land ; because he could not set it off before he knew its value, and he could not know its value but by the certificate of the appraisers ; but he did set it off, knowing its value ; for he asserts its value in his return. Then take for a guide a plain rule of law, that every man acting officially, shall be presumed to have done his duty until the contrary appears ; it ought to be presumed, that this certificate was delivered to him before he set off the land.

Thus it would stand upon the most rigid construction of the statute. But it is difficult for me to see any force in the sug-

gestion, that these acts of the officer ought to appear to have been done in any certain consecutive order. The land is transferred when certain acts have been done. These acts, if done at all, will be presumed to have been done in the order required by the statute, unless the contrary appear. *Omnia præsumuntur rite et solenniter esse acta.* Again; for what purpose were these certificates annexed by the officer, and carried to the clerk to record, except as parcel of his doings—his return? By that act, he adopted them, and virtually attested them. It it is quite immaterial whether his attestation *preceded* or *followed* those certificates. In either case, he must be deemed to have sanctioned them. In view of the whole ground presented in this case, I am well satisfied, that the officer's return is sufficient; and that this advice be given to the superior court.

WILLIAMS and BISSELL, Js. were of the same opinion.

HOSMER, Ch. J. I have the misfortune to differ from the Court, in this case. I should content myself with the mere declaration of my nonconcurrence, were I not persuaded, that some of the principles advanced tend to jeopardize the title to land, and to produce general inconvenience. From the officer's return it does not appear, that the land levied on was appraised by *indifferent* freeholders; nor that before the land was set out, an appraisement in writing was made and delivered to the levying officer. Both these are indispensable requisites to a legal title. It was correctly said, in *Hobart* v. *Frisbie* & al. 5 *Conn. Rep.* 592. 595. that "the acquisition of real estate by execution is derived from statute; it is in derogation of the common law, and is *stricti juris;*" that "the rigid rules of the *summum jus* ought to be enforced, and an omission of any statute requisite is fatal." To the same effect was the opinion of the court in *Williams* v. *Amory*, 14 *Mass. Rep.* 20. 29.

The return of the officer on the execution is the legal and only evidence that the prescriptions of law have been complied with. If *that* is deficient, it never can be aided, by oral testimony, probable presumption, or in any other manner. Like other legal instruments, it is susceptible of construction; but this is made only by giving to the words of the return their plain popular meaning, and assuming any fact that appears by a strictly necessary inference. *Hobart* v. *Frisbie* & al. 5 *Conn. Rep.* 400. *Fisher* v. *Blight*, 2 *Cranch*, 390. *Curtis* v. *Hurlbut*, 2 *Conn. Rep.* 315. *Williams* v. *Amory*, 14 *Mass. Rep.* 20.

That the return of the officer preceding his official signa- *Litchfield,* ture, affirms the *indifference* of the freeholders, or the *delive-* June, 1829. *ry* to him of a *written* appraisement, does not admit of a plausible pretence. On both these subjects it is profoundly silent. Its invalidity, therefore, is unquestionable, unless it derives aid from certain certificates recited and annexed to it, after the signature of the officer's name, with his official capacity subjoined.

Booth
*v.*
Booth.

The return was made and signed in the usual form, comprising all the necessary facts, except those before-mentioned. The land is then set out in the accustomed manner. A certificate of appraisement, bearing date the 6th of *January*, 1826, declaring, that the appraisers are *indifferent* freeholders, next succeeds. After this is subjoined the justice's certificate of the administration of the oath, on the 19th of *December*, 1825 ; the entry of the register, that on the 10th of *January*, 1826, he received the execution for record ; and that of the clerk of the superior court, that on the 14th of the same *January*, the execution was returned into his office. These entries and certificates, not referred to by the officer, are all that appears.

I am of opinion, that the certificates before-mentioned, are no part of the officer's return ; and if they were, that they would not aid the defects alluded to.

1. The usual mode of authenticating an officer's return, for centuries, has been, by the *subscription* of his name, and the expression of his official character. The return has always been *subscribed* or *signed ;* words in relation to this and other legal instruments, of equivalent meaning. I have never heard or read of a valid return, not signed or subscribed. This signature is, invariably, at the close of a return, and of all other legal instruments, except those under the statute of frauds ; and to those I am prepared with a distinct answer. Whether the instrument is a deed, a bond, a covenant, or a return, the invariable usage has been, as far back as legal muniments reach, to authenticate them, by subscription. I am not aware that an instance to the contrary has occurred, except the practice under the statute of frauds. From this uniformity of usage, the expression that a contract or a return was *signed*, has hitherto conveyed to the mind an idea as perfectly defined and unequivocal as language can impart.

I admit, that by usage, any mode of authentication may be sanctioned. But I assert, that no usage has ever existed ex-

*Litchfield,* cept the one before-mentioned. It was said in the argument,
June, 1829. that the signature of an officer, whether in the midst, between

Booth the formal return and the certificates subjoined, or any where
*v.* else, sanctioned the whole as being his indorsement. In sup-
Booth. port of this assertion, neither dictum nor case was adduced, ex-
cept the one of *Williams* v. *Amory,* 14 *Mass. Rep.* 20. 28. That
this decision yields no support to the position advanced, is
clear beyond a question. The certificate *preceded* the sheriff's
return, and was *conformable to usage.* It is called, by Ch. J.
*Parker, " the old practice."* That the official signature of an
officer should be considered as running back beyond the return,
and embracing preceding certificates, is in perfect analogy with
the doctrine that *it is the subscription which authenticates.*
But from this it must not be inferred, that it runs forward, and
without the aid of general usage. It was said by the court, in
the case just cited, that " it might be convenient to continue
the old practice ; (that is, of preceding returns by certificates ;)
"for those certificates *may* become a part of the sheriff's re-
turn, and in case of an insufficient certificate, *may* supply the
defect." The language is very guarded. It is not, that a cer-
tificate prefixed is a part of the return ; but that it *may be.*
Undoubtedly it may, by express reference, or by established
and unequivocal usage ; and in the case, there is nothing in-
compatible with this, as being the intention of the court.

It has been said, that the certificates were subjoined with the
*intent* of making them a part of the return. This assertion, in
my opinion, is wholly gratuitous. The intention is a question
of fact ; and how is this court, a court of law exclusively, to
determine it ? It has not the competency, because it has not the
means of determination. The certificates may have been an-
nexed as paramount evidence, to sustain the officer's return, in
case it should be controverted ; and for this sole purpose. Hence
it is not a necessary inference, that they were intended to be a
part of the return. It was, however, asserted in the argument,
that the intention claimed, appears by *probable presumption.*
But is this court competent to settle the fact, if it presumes it
to be probable ? Certainly not. In short, whether the certifi-
cates were subjoined for one purpose or for another, is a mere
*matter of fact,* and beyond the competency of this court, unless
the inference is strictly a *necessary* result. *Metcalf* v. *Gillet,*
5 *Conn. Rep.* 400. On the point in question, this will not be
pretended. On the contrary, there is much reason for the as-

sertion, that the certificates were appended to render the evidence of certain facts prominent, and not to eke out the return. No officer possessing common sense, makes a return that he believes to be defective ; and when the return is perfect,—that is, in ninety-nine cases out of a hundred,—the preservation of evidence is, necessarily, the only object.

In the argument it was said to have been an universal practice to annex to an officer's return on an execution, the certificates of appraisers, and of their appointment and oath. If this were the fact, it would be of no avail, unless it was intended to make them a part of the return. But the fact is not admitted ; and for two reasons. In the first place, as clerk of a court, I formerly recorded many executions, and to much the greater part of the returns no certificate was subjoined. I now have in possession a book of recorded executions, consisting of more than a hundred ; and on recurrence to them, I have found that more than one half are without a certificate appended to the returns. From this specimen, as well as from general recollection, I am satisfied, that the object was merely the preservation of evidence ; and judging from the known characters of the officers, I am convinced that the extremely careful and apprehensive alone resorted to this expedient. In the next place, I cannot admit the competency of the court to settle this question of fact. It is of a *private* nature, of which the court cannot, *ex officio,* take judicial cognizance. 1 *Chitt. Plead.* 217.

What the usage of officers has been throughout the state, I neither know, nor, sitting here, have the means of knowledge. Usage, like most other facts, might be established by evidence ; and the instances to support it must be not few or partial, existing in one or two counties only, or with one or two officers only ; but there must have been a long, regular and general practice. 2 *Marshall,* 393. When such an usage has been established, by the decision of this court, it may then be recognized without proof; but not before.

It was observed by the plaintiff's counsel, that in cases under the statute of frauds, by numerous decisions, the person promising may sign in any part of the instrument. The principle was stated imperfectly. Courts have held, that the signing of an act or contract required by the statute of frauds, must have the effect of giving authenticity to the whole instrument ; and when the name is inserted in such a manner as to have this effect, that it does not much signify in what part of the instru-

*Litchfield,* ment it is found. *Hawkins* v. *Holmes,* 1 *P. Wms.* 770. *Newl.*
June, 1829. 173. *Sugden* 54. Hence the name of a testator in the intro-
ductory clause of a will, or of a person in the commencing
clause of an agreement, has been deemed an authentic signa-
ture. The doctrine has been carried much further. A sub-
scription as a witness, with knowledge of the agreement;
(*Welford* v. *Beazely,* 3 *Atk.* 503. *Coles* v. *Trecothic,* 9 *Ves.*
jun. 234.) and a bill of parcels in which the vendor's name is
printed, has been held a sufficient signing. *Saunderson* v.
*Jackson* & al. 2 *Bos. & Pull.* 238. *Schneider* & al. v. *Norris,*
2 *Maule & Selw.* 286. But I should be very unwilling to ap-
ply these determinations to instruments at common law, and
reversing the established usage hitherto, to hold, that a bond,
covenant or return may be signed at the top, at the bottom, in
the middle, in the margin, or in the place of a witness.

To the decisions under the statute of frauds, in their appli-
cation to this case, I have two objections. In the first place,
they never ought to be extended by analogy. So far as they
have gone, with some reluctance, I would follow them; but
there I would stop. They had their origin in a boundless
latitude of construction, in subversion of language the most
clearly defined by familiar usage; a construction most unwise-
ly indulged in relation to a very beneficial law; a construction
that has impaired, and threatened to destroy the guard which
it was the purpose of the law to provide. The word *signing,*
taken in its ordinary popular sense, is a complete key to all the
other terms in the clause concerning devises; and yet the con-
struction of this material term has been quite contrary to its
import and received interpretation. *Powell,* in his *Essay on
Devises,* p. 63. has said: "The word *signing* conveys to a
common ear, not versed in technical reasoning, a mere simple
idea, *viz.* the writing of the name of the agent at the bottom of
the act, thereby formally authenticating it as his. It requires,
(he adds,) the ingenuity, therefore, of a schoolman, so far to
wrest this word from its natural sense, as to construe it to
mean the *recital* of a name in any part of an instrument, where
common form or accident may happen to introduce it. Noth-
ing but the strong bent of the times in favour of this mode of
alienation, which equally pervaded the courts of law and the
people, and which had induced that loose construction of the
word *writing* in the statute of wills, that rendered the statute
of frauds necessary, could have given colour to the argument

*Booth*
*v.*
*Booth.*

in favour of such a construction.   But the disposition to en- *Litchfield,*
courage alienation by wills, prevailed so much, at this period, June, 1829.
that the ingenuity of the advocate in explaining away, by con-
struction, the excellent provisions made by this clause to pre-     Booth
vent fraud, could only be equalled, by the avidity with which        *v.*
courts received and supported such exposition."                      Booth.

In the second place, I observe, that the cases determined
under the statute of frauds, are *not analogous* to the one under
discussion.   When a person begins his last will, by saying, " I,
*A. B.*, make this my last will and testament," or commences his
contract, by the assertion, " I, *C. D.*, promise in manner
following," the nature of the cases, independent of usage, would
seem to indicate, that the whole of the writing, of which the
name is a part, should constitute the will or agreement intend-
ed.   They may be said to form one continuous and inseparable
instrument.   But when a return is made and officially sub-
scribed, it is perfect, complete and exclusive.   Certificates
subjoined, without any reference to them, are separate instru-
ments, having with each other no necessary connexion, and the
signature of the return implies no intent, that it should likewise
be a signature of the certificates.   If all was intended to make
one return, why does not the officer say so ?   There is no
ground for applying the observation on which the determina-
tions under the statute of frauds rest, that the name was de-
signed to give authenticity to instruments thus distinct and
disjoined.

Here, again, has occurred an argument founded on *probable
presumption ;* an unusual argument in reference to a return,
which the law requires to be certain and complete, either *per
se,* or by express reference.   This Court is incompetent to
settle a fact, on probable evidence.   It is the converse of the
established rule, that in a return every necessary fact must
appear by a fair construction of the expressions used ; and that
the exposition of it cannot, operating as it does *in invitum,*
outrun the meaning of its words.   *Metcalf* v. *Gillet,* 5 *Conn.
Rep.* 404.

I entertain no doubt, that the recited certificates are no part
of the officer's return.

2. If, however, they are considered as part of the return,
the return still is incurably defective.

That the written appraisment reached the hands of the offi-
cer as early as the 10th of *January,* is admitted ; for, on that

day, he caused it to be recorded with the execution. But it appears neither by averment nor inference, that he received it before that day; whereas on the 6th of *January*, he set out the land.

It was said in the argument at the bar, that the certificate bearing date on the 6th of *January*, it is a presumption, that it was delivered at its date. What presumption, I ask;—of fact, or of law? Not of fact; for, at most, it is a probable presumption, which this Court has not the competency to draw. Neither is it a presumption of law. The presumption lies the other way; for the law has established, that the return of the officer is the requisite evidence, and that it authorizes no inference, which is not strictly necessary. If it be enquired, why this rigour? I answer, because it is within the power and it is the duty of the officer to speak intelligibly, and to the point. Besides, the person whose land is taken from him, by the strong arm of the law, and creditors who have an interest in the question, have a right to demand clear and undoubted evidence, that every requisite of the law has been observed. For these reasons, it stands on very different ground from the date of a bond, note or other contract. In respect of these, the contractor will take care of himself; and so far is this principle carried, that the construction, if there be any ambiguity, shall be taken most strongly against him.

I, then, assume these facts; that the land was set out on the 6th of *January*, and that the appraisment was not delivered to the officer until four days afterwards.

The statute requires, in so many words, that the estimate of the value of the land shall be delivered to the officer, " who shall thereupon set out the land to the creditor." *Sect.* 76. *p.* 57. In *Metcalf* v. *Gillet,* 5 *Conn. Rep.* 400. this Court decided, that " until the officer is *possessed* of the appraisers' certificate, duly executed, he cannot set out the land on execution;" and in *Bill* v. *Pratt,* 5 *Conn. Rep.* 123. the same point was adjudged.

In opposition to this reasoning, it was, first contended at the bar, that as the appraisment bears date on the 6th of *January*, the Court will presume that it was delivered on that day. I have endeavoured to answer this position, and to show that the Court cannot presume the fact; that the presumption of law is against it, by its requisitions of a certain return; and that the debtor can be deprived of his land, only by a return, clear,

explicit, and as to every material fact, amounting to a necessa-
ry inference.  May not a return bear date on a certain day,
and be delivered on a subsequent day ?  How then are we
authorized to presume a fact, when the materials of a just
presumption are not before us; and a fact, too, which the
officer is bound to affirm ?

It was next contended, that the *setting-out* of the land is no
one particular act ; but that it is a general proposition, com-
prising all the acts necessary to make out a title ; of conse-
quence, that it is true, only when the last act creating the title
has taken place.  This cannot be correct.  The officer never
sets out the title : it is the law that conveys it.  The facts re-
quired must appear from the return ; and then the title results
as a legal consequence.

The expressions of the statute on this subject, are too clear
to be mistaken.  On the reception of the certificate of ap-
praisement, the law declares, " that the officer shall thereupon
*set out* to the creditor, by *metes and bounds*, so much of the
*lands* as may be sufficient," &c.  It is the *land* that is to be
set out ; and that is made the object to which the expression
refers.  The land is to be *set out in fact* to the creditor ; that
is, it is to be *located* and *indentified*.  But how is this to be
done ?  The statute declares, expressly, " *by metes and
bounds*."  The meaning of the expression *set out*, when applied
to substance, is, " to assign, to allot, to mark by boundaries or
distinctions of space."  *Webster's Dict.*  And when the mode
of setting out is prescribed to be by " metes and bounds," the
intent of the legislature is unfolded with the irresistible
force of demonstration.  The time when this is to be done,
discloses the reason of the requisition.  It is immediately after
the reception of the appraisers' estimate of the value of the
land.  Before this, the officer has not the means of determining
what quantity of the land must be set out.  He now has the
means; and " thereupon," he is required to do the act, identi-
fying the land requisite, by visible monuments.

Such is the plain expression of the statute; and such has
been the invariable construction.  It is to be found in all the
returns made on executions.  They declare, that on a certain
day, the land was set out ; and it was well understood, by the
levying officer, in this case.  " I do thereupon," says the offi-
cer in his return, " on this 6th day of *January*, 1826, by virtue
of this execution, hereby *set off* to the creditor, &c. the above-
described piece of land."  The cases of *Bill* v. *Pratt* and

*Litchfield,*   *Metcalf* v. *Gillet,* before cited, fully recognize and assume the
June, 1829.   meaning I have given to the words commented on.

Booth
*v.*
Booth.

It was, lastly, claimed by the plaintiff's counsel, that admitting the land to have been set out on the 6th of *January,* the subsequent proceedings of the officer validated the levy, by recognition. I cannot admit this principle. It is the *return* that gives validity to the levy, and not the subsequent parol recognition of the officer. As applicable to this subject, the principle is altogether new. That a person, by ratihabition, may bind himself in a contract, made for his benefit, as if there had been a precedent command, is not disputed; and for this plain reason, that the law has prescribed neither the mode nor the time of declaring his assent. But in the law regarding the levy of executions, this principle has no place. Facts must be returned with certainty, authenticated by an artificial signature; and they must be true at the time when the return is subscribed. This is established law; and a deviation from it, to meet a particular mischief, which may be productive of general inconvenience, in my opinion, is entirely inadmissible. I may be permitted to doubt whether there is any mind of so long and sure a reach as to be able to anticipate the consequences of such a change.

In the expression of my opinion, I am sensible, that I have run to a great, and, perhaps, unreasonable length. But I have been induced to it, by the desire of preserving, so far as is within my power, what I consider to be principles, long and wisely established. The branch of the law relative to returns, is very antient; and it is my ardent wish, that its certainty and simplicity may not be impaired. In this subject the community has a deep stake. It is, comparatively, of little inconvenience to require rigid strictness in the returns of officers on executions. The provisions of the law in relation to their levy are few, simple and easily complied with, except by those, who neglect to read a single section, that concerns the performance of their duty. On the other hand, if persons who search the records of land titles, to ascertain the validity of a levy, cannot rely on the plain meaning of familiar words, authenticated by an official signature, but are driven to investigations, which require the learning and talents of a profound lawyer, I am very apprehensive, that great inconvenience will result.

PETERS, J. was of the same opinion.

Return sufficient.