## Miles Burnham *versus* Samuel Aiken, et a.

Where a sheriff, in making an extent of an execution upon land, charges illegal fees, and deducting them from the sum at which the lands are appraised, applies the residue of that sum to the satisfaction of the execution, he incurs the penalty prescribed for taking illegal fees, and may be compelled, by an action, to refund the amount ; but the validity of the extent is not affected by the illegal fees.

When an execution against [several] debtors is extended upon land, of which they are severally seized, the lands of each debtor must be separately appraised, otherwise the extend will be void.

Burnham
v.
Aiken, et a.

THIS was a writ of entry brought to recover a tract of land in Chester, and was tried upon the general issue, at the last August term of the common pleas, in this county, and a verdict taken, by consent, for the [demandant, subject to the opinion of this court upon the following case.

John Coffin was seized, in fee, of the demanded premises, before, and at the time of the extent, hereafter mentioned. The demandant having an execution in his own favor, against the said John Coffin, Abraham Towle, and others, for $1802, debt, and $17,47 costs of suit, on the 1st February, 1830, caused the same to be extended upon the demanded premises, and also upon four other tracts of land belonging to the said Abraham Towle.

The choice of the appraisers was stated by the officer in his return, as follows :—

"I have directed three appraisers to be chosen, that is to say, John H. Reed, by the creditor, within named, John Folsom, esquire, by the debtors, within named, and John Sargent, junior, who was chosen by myself."

The several tracts of land upon which the extent was made were not separately appraised by the appraisers, but were appraised all together at one sum of $858.

The officer who made the extent, returned the execution satisfied, in part, to wit, for the sum of $815 96, being the residue of the sum of $858, after deducting his fees and the expenses of the extent.

The officer's fees, and the expenses of the extent were stated in the return as follows :—

| | |
|---|---|
| Poundage, | $7 04 |
| Attendance, | 2 00 |
| Notifying parties, &c. | 2 00 |
| Paid Justice, | 0 50 |
| Paid chainmen, | 2 00 |

Burnham
v.
Aiken, et a.

| | | |
|---|---|---|
| Paid appraisers, | - - - - | 15 00 |
| Paid surveyor, | - - - - | 4 00 |
| Paid for doing appraisers' writing, | - | 1 50 |
| Expenses, | - - - - - | 4 00 |
| Paid recorder, | - - - - | 2 00 |
| Delivering possession, | - - - | 1 50 |
| Sending execution to recorder, | - | 50 |

42,04

John Coffin, on the first day of March, 1831, by deed, conveyed the demanded premises to the tenants.

*Pillsbury* and *J. Bell*, for the tenants.

*D. French*, for the demandant.

The statute provides, that all executions duly extended upon lands, &c. shall constitute the same title to the party for whom they shall be taken as the debtor had therein. Provided, that if the debtor shall, within one year from the return day, pay, or tender to the creditor, the sum at which the lands shall have been valued by the appraisers, and interest, then such extent shall be void. And one question in this case is, whether, when an execution is extended under this statute upon two or more tracts of land, belonging severally to several debtors, the land of each debtor must be separately appraised in order that he may redeem his land by paying the sum at which it may have been appraised?

There is nothing in the language of the statute, which makes it necessary to appraise different parcels of land separately, or to make any distinction between the property of different debtors. There may be, in some cases, a convenience as between the debtors in having a separate appraisal and return, but with this inconvenience the creditor has nothing to do. The debt is entire. All are equally liable to pay the whole. All can choose but one appraiser. And in order to redeem, the sum at which the lands have been appraised must be paid or tendered. All the debtors, and each, are holden; and

the property of all and each is liable to the payment of the whole debt. The creditor may levy upon joint property or several property, and there is nothing which requires him to specify that he levies on this or that property as the estate of this or that person. The levy is well made, if made generally, when the property belonged to either. All the debtors, as to the debt, form but a unit. There is no reason for requiring of the creditor any division or apportionment, or distinction between them. They all owe a single duty. The creditor may thus well have a general appraisement of the land belonging to all, and hold the whole until the entire appraisal is paid or tendered. On any other principle great injustice might be done. The land of one debtor might rise in value after the extent, and the land of another might fall ; and if one debtor has the right to redeem his land without redeeming the whole, the land which has increased in value may be redeemed, and the land which has fallen in value left in the hands of the creditor, and he must bear the loss.

The extent creates a general lien upon all the land taken, like a mortgage of several tracts of land to secure an entire sum.

The debtors having contracted to pay the whole sum, there is no hardship with respect to them. If one pays he discharges the lands of the others, and has his claim for contribution. But this matter for their own adjustment. 6 Pickering, 227.

As respects the creditor, there is no more reason for requiring that the tracts belonging to different debtors should be separately appraised, and the several parcels liable to a several redemption, than there is for requiring the separate tracts of a single debtor to be separately appraised, and it has been repeatedly decided that this is not necessary. 5 Greenleaf, 390, *Foss* v. *Stickney ;* 1 N. H. Rep. 363, in note, *Atherton* v. *Jones ;* 2 Pickering, 382.

There is the case of *Fletcher* v. *Stone*, 3 Pickering, 250, in which the court held that two or more rights in equity of redeeming several parcels of land from several mortgages, when sold on one execution, ought to be sold separately, and not for a gross sum, because the debtor has a right to redeem one equity sold, without redeeming the others.　But that case turns in some degree upon the language of the statute of Massachusetts, authorizing the sale of equities, and has no direct bearing upon the question now under consideration.

*Porter*, on the same side.

The demandant claims by virtue of the levy of an execution which issued on a judgment rendered in his favour against John Coffin, Thomas Coffin, Abraham Towle and Ephraim Towle, January term, 1830, for $1802 debt, and $17,47 costs.　The levy was made 17th February, 1830.

1. It is objected that the levy is void, because the sheriff states in his return that he "*directed*" three appraisers to be chosen, and not that he *caused* three appraisers to be chosen.

The statute provides that the officer levying an execution on real estate shall "*cause*" three appraisers to be chosen, and it is not contended that the levy is good unless the provisions of the statute have been substantially complied with.

But it is believed the case will not be made to turn against us on a mere verbal criticism, especially when the phrase used is susceptible of an interpretation conformable to the requirements of the statute.

"*To direct*" is sometimes understood in a limited and sometimes in an enlarged sense.　In the one case, it implies ordering or commanding, simply.　In the other, is included the additional circumstance that the order or direction has been complied with.　When a work is spoken of as already accomplished, it is equally proper to say of any one that he directed it to be done as it is to say

that he caused it to be done, and whether the one or the other expression is used, the same idea is conveyed.

The officer is not trammelled in making his return, by the necessity of conforming to any arbitrary or technical rules, or obeying any prescribed form of expression.— The words he uses are to be taken in the same sense as they would be if used in common parlance.

It is a rule in pleading, that language shall have a reasonable intendment and construction.    Com. Dig. Pleader, C. 35.    And if the sense be clear, mere exceptions are not to be regarded.    5 East. 529 ; where an expression is capable of different meaning, that shall be taken which shall support the averment.    4 Taunton, 492.

After verdict an expresson should be construed in such manner as to sustain the verdict.    1 B. & C. 297.

Words are to be construed in a limited or extended sense, as may appear to have been the intention of the party using them.    5 East. 244.

It agrees with the most narrow and restricted rules of criticism, in cases of uncertain or doubtful meaning of any word or sentence, to consult the context and so to interpret the doubtful expressions as the meaning shall be indicated by the whole matter.    *Nam ex antecedentibus et consequentibus fit optima interpretatio.*    2 Black. Com. 379.

The main scope and tenor of the return may be fairly and properly considered in fixing the meaning of words used in any particular part of it.

The sheriff, in his return, says—" I have directed three appraisers to be chosen, that is to say, John H. Reed, by the creditor within named, John Folsom, by the debtors within named, and John Sargent, Jr. who was chosen by myself."

The return may not be altogether so classic—indeed, it may not be quite grammatical, nevertheless we think it sufficient to pass the title to the land.    The requirement of the statute, in substance, is, that three appraisers shall be chosen by certain specified parties.

Now was that done in this case ?

The officer " directed" three appraisers *to be chosen,* not that any three particular individuals should be the appraisers without the choice of the proper parties. So far, then, the return is right. But in the return is added, " that is to say, John H. Reed, by the creditors within named, John Folsom, by the debtors within named, and John Sargent, who was chosen by myself." It seems to us that it may be taken for certain that the word " *direct*" is entitled to one and the same interpretation in regard to all three of the persons named as appraisers. The officer, when he used the word " *direct*," did not mean one thing in regard to two of the appraisers and another thing in regard to the other. Now in regard to John Sargent, it is expressly averred that he was chosen by the officer. The word " *direct*," then, as used in the return, means something different (in regard to John Sargent) from a mere order or command.

If the officer had said, I directed three appraisers to be chosen, that is to say, John H. Reed, who was chosen by the creditor, John Folsom, who was chosen by the debtors, and John Sargent, who was chosen by myself, would it be doubted that it was sufficient ? And yet it might not be defensible on the score of grammatical correctness.

The circumstance of being chosen is expressly affirmed of John Sargent, and we contend, that by fair and legitimate inference, it is to be understood and taken as true in respect to Reed and Folsom. The words " *was chosen*," are not expressed in connexion with each appraiser as he is named, but are to be understood, otherwise the whole is devoid of sense.

If the most literal and limited meaning that can be contended for, should be applied, how then would it stand ? I directed three appraisers to be chosen, that is to say, I directed John H. Reed to be chosen by the creditor, I directed John Folsom to be chosen by the debtors, and I directed John Sargent, Jr. to be chosen by myself who was chosen by myself.

Now this mode of expression affords no pretence that Reed and Folsom should be appraisers without the choice of the parties who had the right to choose, and if they adopted the direction of the officer and made his choice their own, it is sufficient—they then chose.

The words following the videlicit are words of explanation of what precedes—and whatever meaning may be predicated of that part of the sentence, " I directed three appraisers to be chosen," is transferred by the operation of the videlicit to each of the appraisers subsequently named. Did the officer mean that he merely directed himself to choose and the others to choose, and that he chose in pursuance of directions and that they did not. And that the appraisers all came on and officiated, notwithstanding a part of them only had been chosen. This latter circumstance would follow from the whole return if the most limited meaning is applied to that part which is excepted to.

All the supposed obscurity and inconsistency vanishes when the word " *direct*" is construed, as it obviously was intended it should be, to mean the same as *to cause or procure to be done*—and it is contended that this is no strained or unjustifiable interpretation.

But we do not feel ourselves driven to this interpretation as our only resort. Supply the words *was chosen* after each of the words, *Reed* and *Folsom*, as belonging there by necessary intendment and implication, resulting as well from the whole matter, as from their being expressed of Sargent, who stands in the same relation to the word *direct* as do Reed and Folsom, and our return will then be just as they say it should be.

It does not seem to us that we are hard pushed in regard to examples to bear us up in our construction of the language used in the return.

11. Mass. Rep. 515. The statute required, that the sheriff should deliver *seizin* to the creditor, while the return only stated that *possession* had been delivered to the

creditor, but the court held that the whole matter was to
be considered, and that *possession* delivered under such cir-
cumstances was in law *seizin*—and that the mere inaccura-
cy of expression in a sheriff should not defeat a lawful title.
3 N. H. Rep. 279, *Daniels* v. *Ellison*, the sheriff return-
ed that the debtor refused to choose an appraiser, not
stating the refusal to have been after due notice. The
court held that they would infer notice, and suggested
that the case of *Swett* v. *Wallace*, 2, N. H. Rep. 297,
where the word neglect was used in a similar case, went
to the very verge of strictness and narrowness of con-
struction. 4 N. H. Rep. 329, *Cooper* v. *Bisbie*, the
sheriff returned that the creditor chose an appraiser, and
that he, the sheriff, chose two appraisers on his part, the
debtor not being in this state, &c.

The provision of the statute is, that in all cases where
the debtor shall, on due notice, neglect or refuse to choose
an appraiser, the officer shall appoint one for such debt-
or. There is no provision in terms in the statute that
the absence of the debtor shall be equivalent to notice
and neglect or refusal. But the liberal and proper con-
struction is that the legislature so intended.

Should not the same liberal interpretation be extended
to the language used by the sheriff in his return in the
case at bar ?

Moreover, in the case last cited, the sheriff says he
chose two appraisers on *his part*—now he is in no case
authorized to do that. But on a certain contingency he
may act as the attorney of the debtor, and choose an ap-
praiser for him—and he ought regularly to designate
which of the appraisers he chooses for the debtors as was
done in the case of *Daniels* v. *Ellison*.

Now, on the strict rules of criticism contended for on
the other side, this return must inevitably have been ad-
judged bad, because in that case it must be intended that
the sheriff had two appraisers acting in his behalf, and
the debtor had none. But the court held to a more ra-

tional and common sense doctrine, namely, that inasmuch as it appeared that the contingency had happened which made the sheriff the attorney of the debtor for the choice of an appraiser, they would intend and understand that he chose one of the appraisers on the part of the debtor, contrary to his express statement, that he chose both on his own part.

In 5 N. H. Rep. 520, *Rice* v. *Johnson*, one question was, whether the river, or a certain line on or near the bank of the river, was the boundary intended in the sheriff's return.

In stating their opinion the court reason as follows :— " In stating the course of the line along the river, from the " **stake at the river**," it is expressly said to be (that is, the line,) on the river—and although the words, on the river, are not repeated at each change of the course of the line, yet as the line ends at a stake by the river, and in fact nearly coincides through the whole extent with the ridge of the bank, the words *on the river* may perhaps be fairly enough considered as intended to apply to the line in its whole extent." Similar reasoning is used in regard to other points in this case.

We take it, then, as established doctrine, that words may be supplied or understood in the sheriff's return, when there is reasonable ground for the belief that it was so intended. That such reasonable ground exists in the case at bar, when that part of the return excepted to is considered in connexion with the whole return, we are unable to doubt.

2. It is objected that the land in dispute was the several estate of John Coffin, and was set off, together with sundry other tracts, each tract being owned in severalty by some one of the debtors, and the whole being appraised at a certain sum in gross, without distinguishing the value of each tract by itself.

It is contended that it does not lie in the mouths of the debtors to make this objection, they being jointly indebt-

ed, the creditor may treat their several property as joint property if he chooses. The creditor is not bound to know at his peril what quantity of interest the debtors each have in the premises, and to make his levy accordingly. Does it make any difference in regard to his right to levy, whether the estate be the separate estate of one, or the joint estate of all the debtors ?

If a greater interest in land be set off than belongs to the debtor all the interest he has passes. 2 N. H. Rep. 148, 387.

And it would seem not to admit of doubt, that in case a less interest than belonged to the debtor should be set off, all the interest set off would pass.

A mistake, then, in respect to the quantity of interest the debtor has in the land set off, does not necessarily vitiate the levy.

What vitiating quality has a mistake like the one alleged that does not with equal force attach to the case of setting off the interest of a debtor, in land as a fee simple estate, when he had in fact but a life estate only ? The argument in the case cited is, in short, this. The creditor, having levied upon the whole estate, shall hold so much of it as he had a *right to levy upon*—our levy extends over or covers the entire estate—the fee simple. This we claim to hold, and our claim does not overreach our right as respects any one or all the debtors.

But we are answered that we avail ourselves of our rights in a wrong manner. It has been shown that this objection does not hold good in the case of levying upon an interest in land greater than the interest of the debtor. If the debtors jointly claim the land have we not acquired their joint right ? If one of them claims may we not reply that we have acquired all his right ? We might, unquestionably, levy upon whatever was his right. Our levy covers the whole estate. Does it not, therefore bar the claim of any one from whom we might by law take the whole ?

As regards the right to levy upon this land it is clearly immaterial whether it was the estate of any one or all the debtors, and there is no pretended violation of any prescribed or statutory form.

The levy being executed in due form, why should one of the debtors be allowed to defeat it on account of any matter dehors the return and not affecting the right or equity as between the creditor and him? If the debtor may avoid the levy on such ground, why may not the creditor also?

Will it be said that the levy is bad because it is made in such manner that each of the debtors cannot redeem his own land, and leave the rest unredeemed? This objection supposes that in this case each joint debtor is to be treated as the sole debtor. Now we hold that there is no solid foundation for any such claim.

When several parcels of land, all belonging to the same debtor, are set off on execution, the doctrine is well settled that the valuation may be entire, the several parcels not being redeemable separately. The statute makes no provision in terms, nor, as we think, impliedly, for the separate redemption of lands belonging to one joint debtor set off, on execution, with other lands of other joint debtors. The provisions of the late statute require not merely the payment of the sums at which the lands (that is all the lands) covered by the levy are valued, but the payment of the whole debt, and interest, and charges, &c. 1 N. H. Rep. 363.

The present statute makes some change in the law favorable to the debtor, but falling vastly short of the unjust extent to which it is attempted to be carried. According to the present statute the extent shall be void on payment of the sum at which the lands shall have been valued by the appraisers. We can see nothing here which authorizes the sorting out any particular parcel of "the lands," and paying the appraised value of that parcel, and thus avoiding the extent as to that parcel, and leav-

ing it valid as to all the rest. This would be placing the debtor over the head of the creditor to a very inconvenient extent. The value of all the parcels, as a whole, might be high enough, but the value of some one of them might be too low—one might afford a good yearly income, another no income at all. Besides, it would overturn the decided cases that the several parcels may be appraised at a sum in gross.

The sum at which the *lands* (it is to be observed that the statute uses the plural number) shall have been valued by the appraisers, would seem clearly to mean the sum at which all the lands included in the levy have been valued, as on the payment of that sum the extent, not in part, but in whole, shall be void. The statute contains no provision, that on payment of the sum at which any particular parcel of land included in the levy shall be valued, the levy shall be void *pro tanto*.

Will it be said that this mode of appraising lands, set off on execution, cannot be sustained because it embarrasses the debtors in regard to their claims upon each other for contribution, and that it cannot be known otherwise than by the appraisal, how much each pays? It seems to us to be a good answer to this objection that it is no concern of the creditor. He is not bound to know, and often does not know, the relation in which his debtors stand to each other—it is a matter solely for their consideration. If the lands are redeemed the appraisal becomes of no consequence as regards contribution—each debtor will be held to contribute to the one redeeming in proportion to what he owed of the original debt and subsequent charges and interest.

The debtors then have a way of escape from all trouble among themselves as regards contribution. But if they choose not to redeem, shall they visit the ill consequences of such determination upon the creditor, who has no choice in that matter, but is entirely subject to the convenience and choice of the other side?

But in case the debtors do not redeem I see no insuperable difficulty, nor indeed greater than happens in many other cases in settling their respective rights in the matter of contribution. 3 N. H. Rep. 294 ; 7 Mass. Rep. 355 ; 10 Mass. Rep. 450 ; 10 Johns. Rep. 32, *Sawyer* v. *Lyon* ; 6 Pickering, 227.

3 Pick. 250. Two or more rights in equity to redeem several parcels of real estate, ought to be sold separately, but a stranger cannot avoid the sale.

In the case at bar there is but one right to redeem— it applies to the whole or none. It is not like the case of selling two or more rights in equity.

Co. Lit. As to apportionment of rent, 148 a. If the lessor granteth part of the reversion to a stranger the rent shall be apportioned, for the rent is incident to the reversion.

Apportionment of common, Co. Lit. 149 a.

3. It is objected that one of the appraisers was appointed by the debtors, and not by John Coffin alone, whose land was set off.

The claim of one of several joint debtors to act in this particular, without being joined by his co-debtors, cannot, we think, be sustained by any expression found in the statute.

The statute provides that when lands are to be set off on execution the creditor, or creditors shall choose one of the appraisers, and the debtor, or debtors, shall choose another. What ground is there to suppose that the term *debtors*, in the statute, signifies any thing more or less than the judgment debtors ? If it was intended to limit the choice of one of the appraisers to such of the judgment debtors as might happen to own the land to be set off, the framers of the statute would hardly have failed to use language appropriate to that idea. The distinction is obvious between the two cases. Words appropriate to one case (such as are used in the statute) fall far short of suiting the other. We think it may be assumed that

the appraiser was chosen in the manner provided by the statute—by the *debtors*.

Coffin took part in the levy and made no claim at the time for the separate choice of an appraiser, but acquiesced in the choice of an appraiser by the debtors jointly. So the case finds in substance. Ought he not, therefore, to be estopped from complaining ever after? He should have claimed to exercise his pretended right at the time. He should not have acted in the choice of the appraiser, but should have put the creditor upon his caution.

6 Esp. Rep. 61, *Clark* v. *Clark & al.* Where a bankrupt had taken part in the sale of his own effects, under a commission of bankruptcy, he was estopped from denying the validity of the commission.

3 Taunton, 78. A landlord allowing his tenant to expend money in improvements cannot after dispute his consent to the alterations.

2 Esp. Rep. 637 ; 1 Camp. 245. If a man marries and holds the woman out as his wife, he cannot, in an action for necessaries, dispute the validity of the marriage.

8 Mass. Rep. 113. It is laid down as law, that if one of two joint debtors choose an appraiser, the land belonging to both may be set off. A man's right, therefore, in land, may be concluded by the levy of an execution, without his being even notified to choose an appraiser. Both debtors had equal rights and the one not notified, might, if notified, have dissented from the choice of the other, and then there being no choice by the debtors, the sheriff, acccording to the same case, might have chosen for them. Nevertheless notice to one, and a choice by one, was held sufficient. *A fortiori* then one would think an appraiser chosen and agreed to by the debtors jointly would be competent to set off any land liable for the debt. This case is referred to in terms of approbation in 4 N. H. Rep. 329.

3 N. H. Rep. 279. Execution was against the administrator who chose an appraiser, and the land of the heir which descended from the intestate was set off—Held well because the administrator was the proper representative of the debtor, and the land was liable for the debt.

In the case last cited from Mass. Rep. there is a dictum entitled, no doubt, to high respect, that if one of two joint debtors choose an appraiser, and the land of the other is set off, the levy is void. The case at bar is not at all like that. But we cannot help thinking the decision of one of the main points in that case conclusive in our favour—namely, that it is not necessary that the return should state which of the debtors, or whether all of them, were the owners of the land, the demandant being a stranger to the levy. *A fortiori*, one would think it would not be necessary, as between the debtors or their privies in estate and the creditor.

In the case at bar all the debtors acted and concurred in the choice of an appraiser. No man's land, therefore, has been taken behind his back, or without his voice being heard in the appraisal.

4. It is objected that the return shows that the land of the debtors has been taken to satisfy other claims than the debt and costs named in the execution and officer's fees for levying the same.

It is hardly necessary to advert to the consequences which would attach to the doctrine contended for by the other side on this point.

If such is the law, how few levies, either upon real or personal estate, would convey title—and all parties holding under such bad levies would be trespassers. A mistake of the officer in calculating the poundage or travel, if he should estimate either too high, would be subject to the same rule as the particulars objected to in this case. And the sale would apply as well to sales of personal property as to levies on land. There is no hazard in saying that there never was a time when the sheriff

of any county in this state, and all his deputies, were of sufficient ability to respond the damages that the establishing of such a doctrine would render them liable to.

Officer's fees are of two kinds—expressed and limited for certain defined and specific services. And implied and reasonable for certain other services and charges, which, from their nature, cannot be reduced to any uniform rule or standard of compensation—such as the storage of goods, the care and support of animals—the expense of surveying and appraising lands.

To do the duty or incur the charge is made imperative upon the officer. The compensation arises from necessary implication, and not being fixed as to amount, is to be reasonable. 1 N. H. Rep. 23 ; 2 N. H. Rep. 238 ; 4 N. H. Rep. 149.

The compensation of the appraisers may as well be objected to as that of the surveyor or chainmen.

If a larger sum be taken than is reasonable in any particular case, the party aggrieved has his remedy against the officer. He may thereby acquire full indemnification for any injustice done him without bringing mischief upon the unoffending creditor, who has no power, who can exercise no legal control over the officer, more than the debtor can in the matter of fees. 2 Mass. Rep. 238.

RICHARDSON, C. J. delivered the opinion of the court.*

It is said that the tenants in this case are entitled to a new trial, because nothing passed by the extent, under which the demandant claims to hold the land.

Three exceptions have been taken to the extent.

In the first place it is said, that the officer who made the extent charged illegal fees and that a part of the land has been taken to satisfy those illegal fees. And there seems to be no doubt that this exception is well founded in point of fact. Some of the charges are clearly beyond what the statute allows for the services on account of which they are taken.

---

*Parker, J. having been of counsel did not sit.

But when a sheriff takes, for any of the services mentioned in the statute, any greater fee than is provided in the statute, he forfeits $30, for every offence. And when the debtor has redeemed the land, assumpsit may be maintained for any excess taken by the officer beyond his legal fees. The law thus provides a proper punishment for the offending officer, and a remedy for the debtor, and there seems to be no necessity that can render it fit and proper to hold the extent void on that account, and leave the innocent creditor to seek redress by an action against the officer.

We are, therefore, of opinion that this exception to the extent ought not to prevail.

The next exception to the extent is, that the demanded premises which belonged to Coffin, and four other tracts of land which belonged to Towle, were appraised at one gross sum.

If, when an execution against two is extended upon two tracts of land, one of which belongs to the one and the other tract to the other debtor, each debtor has a right to redeem the land taken from him without redeeming the land taken from the other, this exception is well founded. For if he has such a right, his lands ought to be separately appraised, in order that he may know what sum he is to tender in order to redeem his land. 3 Pickering, 252.

The question, whether he has such a right, depends upon the construction to be put upon the clause in the statute of July 4, 1829, which gives the debtor a right to redeem the land taken by extent. This clause provides, that if the debtor, his heirs, executors, administrators or assigns shall, at any time within one year from the return day of the execution, pay, or tender to the creditor or person having his estate, the sum at which the land, tenements or hereditaments shall have been valued by the appraisers, and interest upon the same sum from the time when the execution and the returnof

the extent shall have been received in the office of the register of deeds, then such extent shall be void and of no effect.

The language of the statute of February 15, 1791, on this subject, which continued in force until the statute of 1829 was passed, was as follows :—" In case the said debtor or debtors, their executors or administrators, shall any time within one year from the return of any execution levied on real estate into the clerk's office from whence it issued, go to the creditor or creditors, their executors, administrators or assigns, and tender and pay to them the full of the debt and charges mentioned in the execution, and the interest for such debt and charges from the time of the return of the execution into the clerk's office, as afforesaid, every such debtor or debtors, their heirs, executors or administrators, shall re-enter into such lands and tenements, by due process of law, and be reestablished in their former estate in such lands and tenements."

It thus appears that the language of the statute of July 4, 1829, is different from the language used in the statute of February 15, 1791. But it seems to us, that the general rule intended to be established is the same in both statutes. The makers of the statute of 1791, seem to have had immediately in view, and to have particularly provided for cases of executions which should be entirely satisfied by an extent upon lands. It was, therefore, properly provided that the debtor or debtors should redeem, upon payment of the full of the debt and charges mentioned in the execution. But it is believed always to have been the understanding of the bar, that in all cases where an execution was in part satisfied by an extent upon land, that the debtor might redeem under that statute, by paying the appraised value of the land. Such a case was clearly within the equity of the statute.

But when several tracts of land belonging to the same

debtor were taken by extent he could not, under the statute of 1791, redeem one without paying the whole sum at which all the tracts had been appraised.  1 N. H Rep. 363.

The statute in Massachusetts provides, that a debtor may redeem any tenement taken by extent upon paying the full of the debt for which the same tenement was taken with interest.  And it is settled there, that when several tracts belonging to the same debtor are taken, one tract cannot be redeemed without paying the amount at which all may have been appraised.  7 Mass. Rep. 74, *Barnard* v. *Fisher*; 2 Pickering, 382; 5 Greenleaf, 390.

It has been supposed to be unreasonable to permit the debtor to redeem a particular tract, and leave the rest to the creditor.  For some tracts might rise in value and others fall after the extent; and to give a right to the debtor to redeem some tracts and leave others unredeemed might do great injustice.

We shall, in the first place, consider if Coffin would have had a right under the statute of 1791 to have redeemed his land by paying the amount at which it was appraised.

We have no doubt that the provision of the statute which gives debtors a right to redeem lands taken by extent is to be favourably construed.  3 Pickering, 252. And it seems to us that the true intent of the legislature was to give to every man whose lands might be taken by extent, the privilege of redeeming by paying the sum at which they might be appraised, and interest, notwithstanding the statute, in terms, makes the land redeemable on paying the debt and charges mentioned in the execution.  It is not uncommon to bring cases, which are not within the letter, within the rule which the statute prescribes.  Thus this same statute of 1791, in terms, made only lands and tenements belonging to any person in fee simple, liable to be taken in execution; yet all less estates

Burnham
v.
Aiken, et a.

were held to be within the statute. 4 N. H. Rep. 402, *Pritchard* v. *Brown.* Several cases of a similar kind are enumerated in Comyn's Digest, " Parliament," R, 10—15.

If it was reasonable to give to the debtor the right to redeem by paying the appraised value of the land and interest when the whole execution was satisfied, it must be equally reasonable to give the right to redeem the land when the execution is in part satisfied by paying the appraised value and interest.

And if he might redeem, when an execution was in part satisfied by an extent upon his land by paying the appraised value, and leave the rest of the execution unsatisfied, no good reason is perceived why he might not redeem in the same manner in cases where the execution was in part satisfied by an extent upon his land and in part by an extent upon the land of a joint debtor. It seems to us that it could not have been the intention of the statute, that when divers tracts of land, belonging to two or more debtors, severally, were taken by extent, each debtor should pay the appraised value of all the tracts in order to redeem his own land. Such a construction is not consistent with the spirit of the statute.

The question, whether Coffin had a right, in this case, under the statute of 1829, to redeem by paying the appraised value of his land, is much more easily settled. That statute gives the debtor the right to redeem, in express terms, by paying the sum at which the land has been valued by the appraisers. And we see no ground, on which it can be held, that he was bound to pay the appraised value of other land belonging to another joint debtor, and which had been taken by extent under the same execution, in order to redeem his own land. If Coffin's land only had been taken in part satisfaction of the execution, he would, without doubt, have been entitled to redeem by paying the sum at which his land had been appraised. And why shall he be placed in a worse situation because the creditor saw fit to take other land

belonging to another debtor by virtue of the same execution ?   It is said that Coffin's land may have risen in value, and Towle's land have fallen.   This is true.   But it may be answered, that if the creditor had not taken Towle's land, he might have lost all his debt, which was not satisfied by the extent upon Coffin's land, and yet it is not to be disputed that if the creditor had taken only Coffin's land, Coffin might have redeemed by paying the appraised value of his land.

If Coffin was bound to pay any thing beyond the appraised value of his own land, he must, upon principle, be held to have been bound to pay the whole debt and costs mentioned in the execution.   There is no more reason that he should be compelled to pay the value of Towle's land, than that he should be compelled to pay the whole amount of the execution.

We are, therefore, of opinion that Coffin had a right to redeem by paying the value of his land, and that the extent is void, because his land was not so appraised as to enable him to avail himself of that right, had he seen fit so to do.

We are also inclined to be of opinion that another exception which has been taken to the extent, is well founded.   This exception is, that it does not appear that any option was given to the debtor to appoint an appraiser or that he was in any way consulted upon the subject.

The rule is, that nothing shall pass by an extent of an execution upon land unless every thing required by the statute to make a valid extent, is expressly stated or necessarily implied in what is stated in the officer's return. 3 N. H. Rep. 46, and 87—88 ; 5 ditto,525 ; 4 ditto, 329 ; 2 ditto, 498.

It is essential to the validity of an extent that the debtor, if residing in the county, have an opportunity to appoint an appraiser.   2 Mass. Rep. 154, *Eddy* v. *Knap.*

All that is said in the officer's return, in this case, is— " I directed three appraisers to be chosen, that is to say,

J. H. R. by the creditor, J. F. by the debtor"—Whether the debtor or the creditor complied with the direction, it is not stated. It does not appear even that this direction was given to either of them, or that Folsom and Read were in fact chosen by any body.

The usual form of the return is—" I caused three appraisers to be chosen." But to cause a thing to be done is one thing—to direct it to be done is quite another thing. What is caused to be done, is done. What is directed to be done is by no means always actually done. But it is not necessary to settle this point, and we shall therefore leave it undecided.

*Verdict set aside and a new trial granted.*