## ARGUED AND DETERMINED

### IN THE

# *Supreme Court of Errors*

### OF THE

# STATE OF CONNECTICUT.

---

### CAMP *against* BATES.

Where the return of the officer on an execution levied on land contained the
following charges—"paid surveyor, 4 dollars, 31 cents; paid appraisers, 12
dollars; paid chain-men, 2 dollars, 1 cent; paid for refreshments, 1 dollar,
25 cents;" it was held, 1. that a more detailed statement of such expenses
was not required by law; 2. that these charges were within the statute of
1828, relative to the levy of executions on real estate, and consequently, the
levy was not thereby invalidated.

The import of the word " fees," as used in the statute referred to, is not restrict-
ed to the charges of the officer for his personal services, but embraces also all
*the expenses attending the levy and included in it.*

Where the execution creditor, after the appraisers had viewed several parcels of
land levied upon, and had affixed their signatures to a certificate of appraisal,
which they retained in their hands subject to be altered by them, if they
should deem it proper so to do, stated to them, in the absence of the debtor,
that one of such parcels of land was appraised, as he thought, too high, and
requested them to review and further consider their appraisal; and they,
upon a review and further consideration of their appraisal, altered it, by re-
ducing the value of that piece of land; and then delivered their certificate,
so altered, to the officer; such alteration being made by the appraisers *bona
fide*—without any fraud on the part of the creditor, or any fraud, corruption
or partiality on the part of the appraisers; it was held, that such alteration
did not make the levy void.

*Middlesex,*
*July, 1838.*

Camp
*v.*
Bates.

THIS was an action of ejectment ; tried at *Middletown,* *February* term, 1838, before *Huntington,* J.

On the trial, the plaintiff, in proof of his title to the demanded premises, offered in evidence an execution duly issued upon a judgment in his favour against the defendant, recovered before the superior court, on the first *Tuesday* of *September,* 1836, for the sum of 4187 dollars, 16 cents, damages, and 36 dollars, 17 cents, costs of suit, and the return of the officer thereon. This execution and the officer's return thereon, it was admitted, by the defendant, were, in all respects, correct and valid, except in two particulars, on account of which he claimed that the levy was void. 1. That the fees and charges made by the officer upon the execution, and constituting part of the amount for which the premises were set off, were illegal. The items excepted to were the following : " Paid surveyor, 4 dollars, 31 cents ; paid appraisers, 12 dollars ; paid chain-men, 2 dollars, 1 cent; refreshments paid for, 1 dollar, 25 cents." 2. The defendant claimed to have proved, by the testimony of one of the appraisers, that after they had viewed the several parcels of land levied upon, and had affixed their signatures to a certificate of the appraisal, the plaintiff, in the absence of the defendant, stated to the appraisers, that one of such parcels of land was appraised, as he thought, too high, and requested them to review and further consider their appraisal ; and that they did so, and reduced it. The defendant claimed, that if these facts were proved, the levy was void ; and prayed the court so to charge the jury.

The court instructed the jury, that the levy was not void, by reason of any of the charges of the officer endorsed on the execution, and embraced in his levy. And further, if they should find, that the appraisers made and signed a written appraisal, and did not deliver it to the officer as then made, but retained it in their hands, subject to be altered by them, if they should deem it proper so to do ; and they did in fact, subsequently, upon a review and further consideration of their appraisal, alter it, by reducing the appraised value of said parcel of land, and then signed it so altered, and delivered it to the officer ; and should also find, that the plaintiff made the statement and request claimed by the defendant to have been proved, but should also find, that such alteration was made, by the appraisers, *bona fide,* without any fraud on the part of the plaintiff,

or any fraud, corruption or partiality on the part of the apprai-
sers; such alteration would not make the levy void.

The plaintiff obtained a verdict; and the defendant moved
for a new trial, for a misdirection.

*W. W. Ellsworth* and *Baldwin*, in support of the motion,
contended, 1. That the items excepted to, stated in the return,
were illegal. The law would not sanction a charge for *refresh-
ments*, even if it was specific. But this and the other charges
are *in gross:* a round sum paid to the appraisers, so much to
the surveyor, &c., without specifying "the time spent." *Stat.*
393. *tit.* 83. *s.* 12. 13.

2. That if these charges were not lawful, the levy was void,
and no title passed. *Beach* & al. v. *Walker*, 6 *Conn.
Rep.* 190.

3. That the levy was not aided, by the confirming acts of
1826 and 1828. The former is applicable only to levies *pre-
viously* made; and the latter only to *fees* of the officer,—not
to other incidental expenses. The expression is, "other and
greater fees than the said officer shall be entitled to." *Stat.*
70, 71. (*ed.* 1835.)

4. That the levy is void, by reason of the plaintiff's tamper-
ing with the appraisers. Such conduct is opposed to princi-
ples of public policy, and naturally leads to oppression and
injustice. The law will not enquire whether there was, in a
particular case, any fraudulent design, or not; but will pre-
vent the fraud, by removing the temptation to practice it.
*Mills* v. *Goodsell*, 5 *Conn. Rep.* 475. 479. *Kyd* on
*Awards*, 346.

*Hungerford* and *Wightman*, contra, contended, 1. That
the charges embraced in the officer's endorsement, do not avoid
the levy. In the first place, it is validated, by the act of 1828.
*Stat.* 70, 71. (*ed.* 1835.) This act was occasioned by the
decision in *Beach* & al. v. *Walker*, 6 *Conn. Rep.* 190., and
was intended to remedy the evil resulting from that decision,
which considered the levy as void, because *too much land* was
taken, by reason of the unlawful charges. The legislature
intended to provide a remedy as broad as the evil to be reme-
died. If the officer embraced in his endorsement and levy
*other* fees or *greater* fees than the law allowed, the consequence

would be, that too much land would be taken; and this, according to the decision in *Beach* v. *Walker*, would avoid the levy. Secondly, if the act of 1828 is not sufficiently comprehensive to embrace the charges in this case, the excess, if any, must be very small, and falls within the maxim *De minimis non curat lex. Huntington* v. *Winchell*, 8 *Conn. Rep.* 45. *Spencer* v. *Champion*, 9 *Conn. Rep.* 536. Thirdly, if the excess were more important in amount, the entire levy ought not, on that account, to be avoided; as the debtor, if aggrieved, may obtain redress in chancery. *Huntington* v. *Winchell*, 8 *Conn. Rep.* 45.

2. That the charge was correct in relation to the appraisers. Under this charge the jury have found, that the alteration in the appraisement was made *bona fide*, without any fraud in the plaintiff, or fraud, corruption, or partiality in the appraisers. The facts, then, are these. The appraisers signed a certificate of appraisal, but retained it in their own hands, subject to alteration or amendment. The plaintiff said, he thought they had appraised one piece of land too high, and requested them to reconsider it, which they did, and subsequently altered their appraisement, and delivered their certificate, altered accordingly, to the officer. These facts do not avoid the levy. The appraisers have the entire controul of the subject matter, and may alter their appraisement at pleasure, until its final delivery to the officer; otherwise, the most palpable errors must go without correction, and gross injustice be done. *Bill* v. *Pratt*, 5 *Conn. Rep.* 127. Within the last ten or twelve years, the courts in this state have adopted a more liberal policy than formerly prevailed, in favour of the levies of executions. *Booth* v. *Booth*, 7 *Conn. Rep.* 350. *Huntington* v. *Winchell*, 8 *Conn. Rep.* 45. *Isham* v. *Downer, Id.* 282. *Peck* v. *Wallace*, 9 *Conn. Rep.* 453. *Marcey* v. *Kinney* & al. *Id.* 394. *Kellogg* & al. v. *Wadhams, Id.* 201. *Backus* & al. v. *Danforth*, 10 *Conn. Rep.* 297.

HUNTINGTON, J. The levy of the execution, which was the evidence of the plaintiff's title, is claimed to be void, on two grounds: that it embraces charges made by the officer, not authorized by law; and that the conduct of the plaintiff, in stating to the appraisers that they had appraised one of the parcels of land, as he thought, too high, and requesting them to

review and further consider their appraisal, and the act of the appraisers in subsequently reducing the amount of their apprai- *Middlesex*, July, 1838. sal, as set forth in the motion, were such as to invalidate the proceedings and prevent the acquisition of any title under the Camp *v.* Bates. levy. The judge at the circuit instructed the jury, that the levy was not void, by reason of any of the charges of the officer endorsed on the execution and embraced in the levy; and left to the jury the question of fact, whether the appraisal was made *bona fide*, without any fraud on the part of the plaintiff, or any fraud, corruption, or partiality on the part of the appraisers, which they have found in the plaintiff's favour. The question now before us, is upon the correctness of these instructions.

1. Was the levy void, by reason of the illegal charges embraced in it? The exceptions are to the charge for refreshments, 1 dollar, 25 cents; and to the *general* statement of the expenses paid—to the appraisers, 12 dollars; surveyor, 4 dollars 31 cents; and chain-men, 2 dollars, 1 cent. It is supposed, in relation to the latter charges, that as the statute prescribes a *per diem* compensation for these services, the officer's return should specify the precise time those persons were necessarily employed, that it may appear no greater sums were allowed them, than those authorized by law. We think this exception ought not to prevail. There is no statute which requires a detailed statement of these expenses, to the extent claimed by the defendant; and without proof, we ought not to presume that they exceeded the amount allowed by law.

The exception to the item for refreshments, is based upon the decision of this court, in the case of *Beach* & al. v. *Walker*, 6 *Conn. Rep.* 191., in which it was held, by a majority of the court, that if by reason of unlawful charges, too much land is taken and set off to the creditor, the proceeding, being an entire and indivisible act, is wholly void. We do not find it necessary, in this case, to review that decision upon this point. If it were, we might say it was received with much surprise, not to say dissatisfaction, by the profession at large; and before we give it the force of authority, we should feel it to be our duty, carefully to examine the reasons by which it is attempted to be supported, and to enquire whether there is any legal or equitable principle to sustain it. In the case of *Burnham* v. *Aiken* & al. 6 *N. H. Rep.* 306., a contrary doctrine is estab-

*Middlesex,*
*July, 1838.*

Camp
*v.*
Bates.

lished, by the supreme court of *New-Hampshire.*  Waiving, however, a re-examination of the case of *Beach* v. *Walker,* and without controverting, in reference to the case before us, the correctness of the decision on the point referred to, we entertain no doubt that the instruction to the jury, in the present case, was right.  The levy in question is embraced by the statute, (*tit.* 2. *c.* 3. *pp.* 70. 71. *ed.* 1835.) passed in 1828, which enacts, in the first section, that "whenever an execution shall be levied on lands, tenements, or other real estate of the debtor, in all other respects, according to law, except that the officer levying such execution shall, by mistake or otherwise, have endorsed on said execution, and have embraced in his levy other and greater fees than the said officer shall be entitled to, such levy, and all levies heretofore made, which are not in other respects defective, are hereby declared to be valid and effectual to transmit the title of the real estate levied upon : *Provided,* that the liability of such officer, for receiving more than his lawful fees on the levy of such execution, shall in no way be altered or affected, by this act."  The second section gives a remedy, by action on the statute, to the person against whom the illegal charge has been made, to recover threefold the amount of all the officer's fees charged, of any officer who has levied an execution on lands, tenements, or other real estate, and shall have endorsed thereon, or included in his levy, more than lawful fees.  This statute is both prospective and retrospective in its operation.  A similar statute passed in 1826, (*tit.* 2. *c.* 3. *p.* 70.) was retrospective merely, and applicable to antecedent levies only.  It provides, " that no levy of an execution on real estate heretofore made, shall be deemed void, because the officer who made such levy, embraced in his return thereon, as part of the costs of such levy, allowances to the appraisers, surveyor, and chain-bearers employed, and the justice who administered the oath to the appraisers, and an allowance to the town-clerk who recorded such execution, greater than the sum of thirty-five cents ; nor because such officer embraced in his return, as part of the costs of such levy, other or greater fees than were by law allowable ; but all such levies, which are not in other respects defective, are hereby declared to be valid and effectual to transmit the title to the real estate levied upon ;" with the same proviso, that the act should not alter or affect the liability of

such officer for receiving more than his lawful fees, on the levy of such execution, as is contained in the act of 1828.

It would seem to be difficult to maintain the position, that this levy is void, in face of the clear and explicit provisions of the statute of 1828. The ingenuity of counsel, however, has been exerted, to establish a distinction between the charges of an officer, which are not for his personal services, and are, therefore, supposed not to be included in the term *fees*, and such as are strictly and technically fees, being the remuneration which the law gives him for his own services : and it is insisted, that a levy including any charges not authorized by law, and not technically fees—the reward of his individual services, is not embraced by the confirming act of 1828. We cannot yield our assent to this proposition. The refined distinction urged upon us, would force us to give a construction to the statute unnecessary to a due protection of the rights of the debtor, subversive of its spirit, and at variance with its terms, ineffectual to afford a complete remedy for the mischief it was designed to obviate, opposed to the analogies of our law, and the decisions of this court, and unsupported by principle or authority. The statute under consideration, is highly remedial, and should receive a liberal interpretation in aid of the remedy it was intended to furnish. *Atcheson* v. *Everett, Cowp.* 382. *Middleton* **v.** *Forbes, Willes* 259, note. *Coffin* v. *Cottle,* 16 *Pick.* 383. *Jackson* v. *Bulloch,* 12 *Conn. Rep.* 38. And it has been said, that in the case of a remedial statute, every thing is to be done in advancement of the remedy, that can be done consistently with any construction that can be put upon it. *Johnes* v. *Johnes,* 3 *Dow,* 15. It has also been said, that it is not unusual in construing a remedial statute, to extend the enacting words beyond their natural import and effect, in order to include cases within the mischief, and also within the apparent intention of the legislature. *Dean and Chapter of St. Peters* v. *Middleborough,* 2 *Y. & I.* 196. These are strong expressions, and perhaps not entirely in harmony with the opinions declared by other judges, who have manifested an inclination to adhere more closely, in the construction of statutes, to the words of the act. *Rex* v. *Everden,* 9 *East* 101. per *LeBlanc,* J. *Brandling* v. *Barrington,* 6 *B. & C.* 475. *Jones* v. *Smart,* 1 *Term Rep.* 44. 51. per *Ashhurst,* J. The present case, however, requires only the application of a rule which all the decisions sustain,

that a case is within the statute, when it is within the mischief contemplated by the legislature, and also within the plain, intelligible import of the words of the act. It was known to the legislature, that many levies included fees and charges not strictly legal, although highly reasonable.

The case of *Beach* v. *Walker*, had been decided at the circuit, in *December* 1825, and while it was pending in this court, upon a motion for a new trial, the act of 1826 was passed, which was intended to reach that case, as well as all other levies of a like character. It was considered eminently just, to protect the levying creditor against the ruinous consequences which would follow from a general application of the rule established in *Beach* v. *Walker*. It surely never could have been contemplated by the legislature, that a levy including illegal *fees*, (if such an expression be not a solecism) should be made valid, by the act, while levies containing unlawful *charges* should be excluded from its benign operation. The same reason existed to protect the levies, in both cases; the same injustice would be done to the creditors, in both; and the same ruinous consequences would ensue in both, if the proceedings were not upheld. Indeed, it is probable much the greatest proportion of levies supposed to be invalid, by reason of unlawful fees or charges, were those in which the officer's fees for his own services were not greater than the law allowed, but which included other charges, not authorized by the statute. It is therefore fairly to be inferred, that the design of the legislature was to protect all levies, where no other objection existed, than that they included items for services and disbursements not expressly sanctioned by law, and which were specified in the officer's return, under the general denomination of fees. Such a construction of the statute is in accordance with its general object and spirit, and well calculated to advance the remedy, and avoid an evil which would otherwise be intolerable.

The words of the statute, also, lead to the same just conclusion. The expression used is " other and greater fees." If the word *fees* includes, as the defendant supposes, no other than the fees of the *officer*, it is not easy to discover why the word " other" was used at all in the statute. The expression " greater fees," would have embraced all upon which the act was designed to operate. It is not a correct use of language

to say *other fees*, if nothing but fees is intended. In such a case, *another* fee than the law allows, is not a fee, but a charge : — but if the word is understood in its more popular sense, as including all expenses, the propriety of the expression, "other and greater fees," appears very obvious. That, however, which seems to us quite decisive on this point, is, that the word *fees* is used in two senses ; in one, to denote the charges of the officer for his personal services ; in the other—which is the more general and popular use—all the expenses attending the levy and included in it. In the latter sense, it was doubtless used by the legislature, which enacted this law. Such was declared, by this court, to be the meaning of the phrase "other or greater fees," in the confirming act of 1826, to which reference has been made, and which declares, that levies of executions on real estate made previous to its passage, shall not be deemed void, because the officer embraced in his return, as part of the costs of such levy, other or greater fees than were by law allowed. In *Beach* v. *Walker*, where this confirming act of 1826 was applied, and the levy thereby made valid, some of the exceptionable items, were no part of the fees of the officer, in the limited sense of that word; and yet it was held, that the levy was entitled to the protection of the act ; and the court, in commenting on the statute, say, "all the *charges* of the officer on the execution, are perfectly reasonable, eminently just, and so is the act confirming the levies." No distinction is made between *fees* and *charges*. These words are considered as synonymous, and as including whatever the officer returns as the expenses or costs attending the levy. In the present case, the officer has given to them all the name of *fees*. In the case of *Booth* v. *Booth*, 7 *Conn. Rep.* 350., among the items embraced in the schedule of the officer's fees, was the following, "expenses for victualing appraisers, a 87½,"—a form of expression not essentially variant from that used in the case before us, "refreshments paid for, 1.25." It was obviously no part of the fees appropriately his own. This court applied the law of 1826 to this item, and sustained the levy, remarking that it had been "suggested that several items *in the bill of fees charged by the officer*, and for which, as well as for the debt, the land was taken, were not provided for, by the statute on this subject. This is true, and were this a fatal objection, still it is removed by the confirmatory act of 1826." In this

*Middlesex,*
July, 1838.
_____
Camp
*v.*
Bates:

case also, it is manifest the court consider the word *fees,* as used in this statute, to mean all the expenses of the levy comprised in the return of the officer ; otherwise, the item of $87\frac{1}{2}$ cents for food for the appraisers, would not have been within the purview of the confirming act.    In every point of view, therefore, in which we can consider the question arising upon the first instruction given to the jury, we entertain no doubt it was correctly decided by the court below ; and that the instruction was properly given.

2. Is the second instruction liable to any just exception ? It would be a sufficient answer to this inquiry, to say that it is in precise conformity to that given in the case of *Bill* v. *Pratt,* 5 *Conn. Rep.* 123., and which received the sanction of this court.    In that case, after an appraisal had been made, and a certificate had been signed by the appraisers and delivered to the creditor, the appraisers, at the request of the creditor, and without the knowledge of the debtor, again viewed the land, and appraised the requisite quantity, having different boundaries, and at a less price per acre than their first appraisal.    The court instructed the jury, that the second appraisal was not of course void, and left it to them to say, whether there was any fraud on the part of the plaintiff, or fraud or corruption on the part of the appraisers, affecting the appraisal ; and they having negated all fraud and corruption, it was held, that the instruction was right, and a new trial was refused.    It is impossible to distinguish that case from the present, in point of principle; and it should govern our decision in the case before us, unless it be overruled.    We see no reason to change the opinion there expressed.    On the contrary, a careful examination of the reasons on which it is founded, have confirmed our views of its correctness.

The objection now made by the defendant, if it should prevail, would avoid every levy, where it should appear, that the creditor had spoken to the appraisers, in the absence of the debtor, in relation to the duty they were appointed to discharge, before they had performed it.    We know of no rule of law, or principle of public policy, which speaks in such terms of denunciation, and visits with such consequences, the well meant expressions of an honest creditor, and the *bona fide* conduct of impartial appraisers.    The debtor is abundantly secure in the protection which an upright court and jury will afford him,

against the fraudulent conduct of his creditor or the appraisers. In the present case, the jury have found the conduct of both to have been *bona fide* and free from fraud and partiality. There was no unfairness, no unreasonable hardship, no fraudulent or corrupt practice in relation to this appraisal. It was fairly and honestly made; and the plaintiff is entitled to the benefit of the verdict, which the jury have found for him. The consequence is, that the motion for a new trial must be denied.

In this opinion the other Judges concurred, except CHURCH, J., who was absent.

New trial not to be granted.